# 𝔑𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

NORTH BRITISH & MERCANTILE INSURANCE COMPANY

v.

EDMUNDSON.

November 23, 1905.

1. FIRE INSURANCE—*Policy—Construction—Substantial Compliance.*—
A substantial compliance with the requirements of a fire insurance
policy, including the "iron safe clause", and the provisions as to
proof of loss, is all that can be reasonably exacted.

2. FIRE INSURANCE—*Inventory—Proof of Loss—Conflicting Evidence.*—
Where the evidence is conflicting, it is for the jury to determine
whether an inventory offered by the assured was accepted by the
agent of the insurer as sufficient, and whether a proof of loss
was furnished in a reasonable time and not later than sixty days
prior to the end of twelve months from the date of the fire.

3. FIRE INSURANCE—*Proof of Loss—Effect of Failure to Furnish.*—
Where no forfeiture is provided for in case of a failure to furnish
proofs of loss—forfeitures being provided in case of breach of other
requirements—or furnishing proofs in the specified time is not
expressly made a condition precedent to recovery, the effect of the
failure to furnish such proofs is merely to postpone the time of
payment to the specified time after they are furnished.

4. FIRE INSURANCE—*Proof of Loss—Waiver—Compliance with Policy.*—
Where an insurer is given informal notice of a total loss by fire,
and appears on the ground for the purpose of ascertaining the facts
as to the fire, etc., and negotiations follow with reference to the
payment of the loss, but he takes no steps towards such payment,
and, when a formal proof of loss is tendered nine months after the
fire, points out no defects therein, but indicates a purpose to contest
his liability, a jury is well warranted in finding either that there
has been a waiver as to the proof of loss, or that there has been a
substantial compliance with the requirement of the policy in that
respect.

5. FIRE INSURANCE—*Iron Safe Clause—Object—Books to be Kept.*—The object of the "iron safe clause" in a fire insurance policy is to protect the insurer against fraud by requiring that in case of the destruction of the property, the insured shall furnish a set of books which will present clearly and plainly a complete record of the business he has transacted while the policy was in force, and if the compliance with the requirement be sufficient to protect the insurer against fraud, it is all that can be reasonably demanded. In the case at bar there had been no purchases and but two small sales since the inventory, taken shortly before the policy was issued, and these sales were duly entered in the book containing the inventory, which was preserved and offered in evidence at the trial. The jury, deeming the book sufficient, found for the plaintiff, and their verdict was sustained in the trial court, and will not be set aside by this court.

6. FIRE INSURANCE—*Policy—Construction—Forfeiture.*—Courts, in construing policies of insurance, do not look for grounds of forfeiture, and, furthermore, will construe the language of policies strictly against the insurer and liberally in favor of the insured.

Error to a judgment of the Circuit Court of Federick county, in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Sipe & Harris,* for the plaintiff in error.

*Barton & Boyd* and *Harry R. Kern,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This action was instituted by defendant in error to recover the amount alleged to be due upon a fire insurance policy issued by the plaintiff in error covering such losses as might be sustained by the insured in consequence of the destruction by fire of his stock of merchandise at Middletown, Virginia, embracing coffins, trimmings, instruments and other goods and merchandise used in an undertaking establishment.

The policy was underwritten August 21, 1902, for $700.00

on the insured's stock of merchandise to the value of $650.00, and on office furniture and fixtures, including an iron safe, all in the same building, to the value of $50.00. The value of the property burned was $1,045.50, the fire occurring January 18, 1903. In an inventory made by the insured July 21, 1902, one month before the issuance of the policy, the property of the insured was of the aggregate value of $1,410.75, but in the inventory there was a hearse and a set of furniture not covered by the policy.

A few days after the fire, in response to an informal notice of the fire to the agent of plaintiff in error at Winchester, Virginia, the said agent and the adjuster of plaintiff in error visited Middletown for the purpose of ascertaining the character and circumstances of the loss, taking at the time the paper known as a non-waiver agreement, with the view to avoiding any waiver of the rights of the parties growing out of such examinations as might seem necessary preliminary to an adjustment of the loss. A call was made by the adjuster upon the defendant in error for invoices for the original stock of goods, which he tried to get, but could not, and while there were some negotiations following, plaintiff in error took no steps to pay the loss, and this suit was instituted.

The defense made is on the ground that the terms of the policy were not complied with, especially the provision known as the "iron safe clause," requiring books which should "clearly and plainly present a complete record of business transacted, including purchases and sales made for cash and credit, from date of inventory," and that these books should be securely kept in an iron safe, or in some place not exposed to fire.

This defense was made under the general issue, and by a number of special pleas, on which the jury found against the plaintiff in error the amount claimed by defendant in error of $700.00, with interest thereon from December 10, 1903; and to the judgment on the verdict this writ of error was awarded.

Of the assignments of error made in the petition for the writ of error, only the third, fourth and fifth are relied on here.

The third is to the granting of the eight instructions offered by defendant in error, which are as follows:

(1) "The court instructs the jury that the law only requires from an insured person a substantial, and not necessarily a literal, compliance with the requirements of his policy, and if they believe from the evidence that the plaintiff in this case substantially complied with the requirements of the policy sued on, then they must find for the plaintiff the amount of his loss as proved by the testimony, not exceeding the sum of $700.00 with interest from sixty days after the proof of loss. The said sum to be three-fourths the cash value of the stock not exceeding $650.00, and three-fourths cash value of office furniture and fixtures and iron safe not exceeding $50.00."

(2) "If the jury believe from the evidence that the defendant company waived any of the requirements or conditions of the policy sued on, then they are instructed that such waiver is equivalent to the performance by the plaintiff of such conditions as they believe were so waived."

(3) "If the jury believe from the evidence that the plaintiff offered to the defendant a proper proof of loss within a reasonable time, under all the circumstances of the case, after the fire, and not later than sixty days prior to the end of twelve months from the date of the fire, then they are instructed that such offer was in full time, even though it was made more than sixty days after the date of the fire."

(4) "The court instructs the jury that a substantial compliance with the requirements of the policy is all that is required in a proof of loss, and if the jury believe that the plaintiff in a reasonable time and more than sixty days prior to the end of twelve months after the fire, offered to the defendant such a proof of loss and that the defendant refused to accept the same,

but failed to point out any alleged defects in the said proof of loss, then the defendant is to be taken to have waived the defects not so pointed out, and the right to require any further proof of loss."

(5) "If the jury believe from the evidence that an inventory substantially in accordance with the requirements of the policy, was made out by the plaintiff within twelve months prior to the date of the policy, then they are instructed that the plaintiff was under no obligation to make any other inventory, or keep any set of books of business transactions or any bills or invoices of any purchases or sales (if any were made) except such business, purchases, or sales, as were made since the date of the inventory; and if they believe that the plaintiff did keep such a record of sales or purchases and did produce it and the original inventory after the fire, then they are instructed that this is a sufficient compliance with the provisions of the policy in this respect."

(6) "The court instructs the jury that even though the inventory produced in evidence as taken within twelve months prior to the date of the policy, contained also items which were not insured, that this does not affect the validity and sufficiency of such an inventory."

(7) "The court instructs the jury that no evidence is admissible to change or alter the undertakings and promises of the parties to the contract of insurance, and that the waivers relied on instead of performances can only have reference to some fact, existing at the time of the alleged waiver. No provision of the 'iron safe' clause can be considered waived in this case other than if the jury believe, that the insured was told by the agents, that the inventory exhibited to them at the time of the issuance of the policy was sufficient, no other inventory would be required of him, although said inventory did not comply with the requirements of said clause. To this extent and to this extent only is any evidence admissible to show a waiver of

any provision in said clause. Proofs of loss required by this policy may be waived by words, acts or conduct that reasonably induced insured to believe a strict compliance with the policy was not required."

(8) "The court instructs the jury that even though the plaintiff may have promised to produce any bills, invoices, other than those referred to in instruction No. 5, and failed so to produce them such a promise is not binding upon the plaintiff at all, especially if they believe he was unable to procure them and so notified the defendant company."

During the negotiations for the insurance, defendant in error showed the agents of plaintiff in error, who called at his place of business and solicited the insurance, the inventory he had made one month before, which, as defendant in error contends, was examined by these agents and not objected to, and with the property in sight and with full knowledge of what it was, they agreed to and did issue the policy thereon for $700.00. The only articles sold by defendant in error after the inventory of July 21, 1902, were one coffin $7.50, and one casket $22.50, and no additional purchases were made. The book, in which the two sales were listed, was kept in the iron safe, and was the same book which contained the inventory of the stock, etc., insured; and this book, which had been produced to the agents of plaintiff in error after the fire, was before the jury. As to whether the inventory was or was not regarded as sufficient when the policy was issued, there was evidence contradictory of that offered by defendant in error, but that was a question of fact for the determination of the jury.

It is insisted that an affirmative warranty on the part of the insured may be satisfied by a very much less literal performance than a promissory warranty, and, therefore, the first instruction was calculated to mislead the jury to apply a loose or liberal construction to all the obligations of the policy including those which should be strictly performed; in other words,

that while a substantial compliance with an affirmative warranty may be deemed sufficient, a strict performance of a promissory warranty, *i. e.*, a literal compliance with the iron safe clause, cannot be dispensed with.

It seems to be conceded as settled law that a substantial compliance with the requirements of the policy, other than the iron safe clause, is all that can be reasonable exacted. This is unquestionably the settled law as to the proof of loss. *Georgia H. Ins. Co.* v. *Goode,* 95 Va. 751, and authorities cited.

A substantial compliance with the provisions of the policy as to proof of loss being all that is required of the insured, and whether or not there has been such compliance being a question for the jury, especially where the policy does not provide forfeiture as a penalty for failure to strictly comply, the court in this case did not err in instructing the jury, that if "the plaintiff offered to the defendant a proper proof of loss, within a reasonable time, under all the circumstances of the case, after the fire and not later than sixty days prior to the end of twelve months from the date of the fire, then they are instructed that such offer was in full time, even though it was made more than sixty days after the date of the fire." The provision of the policy is, not that a failure to furnish proof of loss for "sixty days after the fire" shall operate as a forfeiture, but that "no suit or action on this policy for the recovery of any claim shall be sustained in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

Where "no forfeiture is provided for in case of failure to furnish proofs, forfeitures being stipulated in case of breach of other requirements, or furnishing the proofs in the specified time is not expressly made a condition precedent to recovery, the great majority of recent decisions hold that the effect of failure to furnish them is merely to postpone the time of payment to the specified time after they are furnished." 13 A. & E. Ency. L., 329, and authorities cited.

The real defense relied on by plaintiff in error is that the terms of the iron safe clause, requiring books to be kept clearly and plainly showing a complete record of the business transacted by defendant in error, had not been complied with.

In *Prudential Fire Ins. Co.* v. *Alley, ante,* p. 356, 51 S. E. 812, recently decided by this court, where the iron safe clause in the policy was identically the same as in the policy sued on here, it was held that a substantial compliance with that clause was all that could be reasonably required.   In that case, the insured, to sustain his contention that he had complied with the iron safe clause, introduced in evidence, over the insurance company's objection, an inventory he had taken a short while before the removal of his business from Gate City, Scott county, to Appalachia, in Wise county, at which last named place the policy of insurance on his stock of goods was issued; two books, one to show the purchases and the other the sales made by the insured while doing business at Appalachia; and certain witnesses to explain the manner of keeping the books.   The book of purchases was objected to because it did not give the items or articles claimed to have been purchased, nor show that they were such articles as were covered by the policy.   The objection to the book of sales was that it furnished no data from which the insurance company could tell what had been sold, at what profit, or for what price, but merely purported to give the cash taken in each day; and it was further objected that the books introduced did not "clearly and plainly present a complete record of the business transacted, including all purchases, sales and shipments for cash and credit from the date of the inventory," as provided by the policy.

In that case, as in this, the evidence was conflicting as to whether or not the agent issuing the policy gave the insured to understand and believe that the inventory produced by him was a sufficient compliance with the provisions of the policy; and upon the question whether or not the books introduced were a substantial compliance with the requirements of the policy

the opinion reviews the most recent authorities on the subject, including the decisions by the Supreme Court of the United States, and holds that the provisions of the iron safe clause, under all the facts and circumstances of the case, were substantially complied with by the insured. The facts and circumstances referred to in the opinion in that case were in many respects more favorable to the contention of insurer, with reference to the inventory produced and the books kept by the insured, than they are in the case under consideration.

It is true that in this case the only book kept was a "yellow book on inferior manilla paper," but the policy did not inhibit the list of sales made by the insured being kept in such a book, and there were no purchases made by him between the issuance of the policy and the fire, to be entered and kept. As we have observed, the only sales made by the insured were entered on this book, and it was in this book that the inventory made before the policy was issued appeared, and which was exhibited to the agents who issued the policy. This book was kept in the iron safe, and was produced to plaintiff in error's agents after the fire, who examined it as to the inventory, and only claims that his attention was not called to the entry of the two sales. The entry of the two sales was as plainly written in the book as was the inventory, and the agent who examined it after the fire, if he did not see the entry, made no inquiry as to sales, and it is not shown that the insured made any other sales.

The fourth assignment of error relates to the action of the court in modifying instructions Nos. 2 and 3, and in refusing instructions Nos. 5 and 6, offered by plaintiff in error.

Instruction No. 2 is as follows: "The jury are instructed that under the terms of the policy of insurance on which this action is founded, it was the duty of the assured to take a complete itemized inventory of the stock on hand at least once in each calendar year, and unless such inventory had been taken within twelve calendar months prior to the date of the policy

sued on in this action, it was the duty of the assured to take such inventory within thirty days after the issuance of said policy; and if the jury believe from the evidence that the list of the property contained in the yellow blank book submitted in evidence was shown to the agents of the defendant company at, or a short time before, the writing of the said policy, and it was then understood between the parties not to be a sufficient compliance with the provisions of said policy in respect to the inventory therein required, and that a promise was then made by the assured to make a new inventory covering the stock embraced in the policy, and that after such promise and understanding said policy was written, the plaintiff cannot recover in this action unless they shall find that such new inventory was afterwards made by the plaintiff in accordance with the provisions of said policy."

The change made by the court in the instruction was, to add to its purport and meaning the qualification, "unless the insured was told by the agents of the insurer at the time the insurance was taken that the inventory exhibited to them was sufficient." The effect of this modification was to tell the jury that if plaintiff in error (the insurer) regarded the inventory taken July 21, 1902, as a sufficiently "complete itemized inventory of the stock," and on the strength of it issued the policy, then the jury was to also so regard it. As the evidence on that point was conflicting, it was entirely proper to modify the instruction as was done, otherwise it would have been incomplete and calculated to confuse and mislead the jury.

While the refusal to give plaintiff in error's instruction No. 6, is complained of in the assignment of error under consideration, the objection is not urged in the argument. This instruction told the jury that if they found from the evidence that defendant in error failed to make proof of loss within sixty days after the fire, such failure barred his right of recovery in this action, and they should find for plaintiff in error; in other words, that unless there had been a literal compliance with the

requirement of the policy that proof of loss should be furnished by the insured within sixty days after the fire, he could not recover on the policy. For the reasons already stated the instruction was rightly refused.

As stated in the petition for this writ of error, the modification of plaintiff in error's instruction No. 3, and the refusal of its instruction No. 5, approach so closely to the crucial question in the case that they may be discussed in connection with the refusal of the court to set aside the verdict and grant a new trial.

The only compliance with the iron safe clause in the policy, with reference to keeping "a set of books," &c., was the memorandum in the small "yellow blank book" on inferior manilla paper," in these words:

"Sept. 30, 1902.

"Sept. 30, by one coffin, Waters, $7.50.

"Nov. 14, by one casket, Rennels, $22.00."

This book, as has been remarked, was kept in the iron safe and produced after the fire, and while defendant in error had another book, spoken of as a ledger, in which he made entries of certain business transactions with customers, and which was kept in his desk and lost in the fire, it is not pretended, so far as this record discloses, that he made a single purchase as an addition to his stock of coffins, etc., covered by the policy, or made any sales not entered in the "yellow blank book." Yet plaintiff in error sought to have the jury instructed that as a matter of law defendant in error had not complied with the iron safe clause, and, therefore, could not recover in this action.

Nor is it shown, or attempted to be shown, by any evidence in the cause, that the loss of the ledger, which was burned, operated injuriously to the plaintiff in error. It contained no entry of transactions essential to an understanding of what had been the business transactions by defendant in error as an undertaker.

Three questions were submitted to the jury; the first was as

to whether or not the inventory taken by defendant in error July 21, 1902, was regarded by the agents of plaintiff in error as sufficient, and they gave the defendant in error to so understand; second, whether there had been a substantial compliance with the requirement of the policy as to proof of loss; and, third, whether or not the memorandum of sales made by defendant in error in the "yellow blank book," between the date of the policy and the fire, was a substantial compliance with the iron safe clause.

With reference to the first question, while the agents of plaintiff in error who solicited the insurance and issued the policy testified that the inventory when submitted to them was not recognized and admitted to be a sufficient compliance with the terms of the policy with respect to the inventory therein required, the defendant in error testified to the contrary, and the jury chose to believe him, which is conclusive of that question, the case being heard here as upon a demurrer to evidence.

As to the second question, while the notice to plaintiff in error as to the loss, which was total, was informal, its agents appeared on the ground to ascertain the facts as to the fire, etc., and negotiations followed with reference to the payment of the loss, the plaintiff in error taking no steps towards the payment thereof, and when Kern, the attorney for defendant in error, presented to the general agent of plaintiff in error, a formal proof of the loss in October, 1903, the latter did not point out any defects in the proof offered, but clearly indicated a purpose to contest the right of defendant in error to recover on his policy by reason of his failure to comply with the iron safe clause as to the books he was required to keep. Under these circumstances, the jury was warranted in finding, either that there had been a waiver as to proof of loss, or that there had been a substantial compliance with the requirement of the policy in that respect.

The question whether or not there had been a substantial compliance with the iron safe clause with reference to the books

required by the policy to be kept was submitted fairly to the jury on the instructions given, which told the jury what was the legal effect of the failure to keep such books, and then left it to the jury to say whether or not such books were kept in point of fact.  What was required was "a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit, from date of inventory  .   . and during the continuance of the policy."   It was not required that the record of sales should show at what price sold, whether for cash or on time, nor was it required that the book or books show whether the sales were for cash, or on credit, but only that there should be a complete record of the business transacted, etc., and whether a sale was for cash or on credit, it was to be entered as a sale.   Nor did the policy inhibit the list of sales being kept in a "yellow book of inferior manilla paper."   There had been no purchases, and only two coffins sold, and these sales were listed in the same book with the inventory made before the policy was issued, exhibited to the agents who agreed to issue the policy.   That this book was kept in the iron safe and exhibited after the fire is not denied.   Let us suppose that there had been neither a sale nor a purchase by the insured between the issuance of the policy and the fire; could the insurer have avoided the payment of the loss on the ground that the iron safe clause had been violated?   Certainly not.

The opinion in *Prudential F. Ins. Co.* v. *Alley, supra,* quotes from the opinion of the Supreme Court of the United States in *L. & L., &c. Ins. Co.* v. *Kearney,* 180 U. S. 132, 45 L. Ed. 460, 21 Sup. Ct. 326, as follows: "Turning now to the words of the policies in suit, what is the better and more reasonable interpretation of those provisions so far as they relate to the issues in this case?   The convenant and agreement to keep a set of books showing a complete record of business transacted, including all purchases and sales, both for cash and credit, together with the last inventory of said business, should not be interpreted to mean such books as would be kept by an

expert bookkeeper or accountant in a large business house in a great city. That provision is satisfied if the books kept were such as would fairly show to a man of ordinary intelligence 'all purchases and sales both for cash and credit.' "

In *Prudential F. Ins. Co.* v. *Alley, supra,* referring to the books kept by the insured, the opinion says: "While the book of purchasers does not give an itemized statement of all goods purchased after the inventory was taken, it does show the amount of each bill of goods purchased, when and from whom. · Neither does the book of sales give an itemized statement of the goods sold, but it does give with a few exceptions, which are satisfactorily explained, the amount of each day's sales. It clearly appears that no goods were sold or authorized to be sold by the insured upon credit, and that such goods as were sold without being paid for by the purchaser were treated as cash sales on the book of sales and accounted for as cash by the clerk who sold them." Then it was held that the provisions of the iron safe clause, under all the circumstances of the case, were substantially complied with. In other words, while the books under consideration were not kept as books would be kept by "an expert bookkeeper or accountant in a large business house in a great city," such bookkeeping was not to be expected of a storekeeper in a little mining town, and if the insurer expected it, it ought to have said so in plain language; that where a record of the sales and purchases in a business is so kept as of itself to show the business transacted, or where with explanation as to the entries it shows the business transacted, such a record is a substantial compliance with the iron safe clause of an insurance policy.

The reasoning upon which the conclusion is reached is obvious. The object of the iron safe clause is to protect the insurer against fraud by requiring that in case of the destruction of the property the insured will furnish a set of books which will present clearly and plainly a complete record of the business he has transacted while the policy was in force, and if the

compliance with the requirement be sufficient to protect the insurer against fraud, it is all that can be reasonably required; otherwise a just liability on the insurer might in many cases be avoided by the defense that the requirement had not been literally complied with, although it was not stipulated what system of bookkeeping was to be employed by the insured, and no harm whatever had come to the insurer by reason of the iron safe clause not having been literally complied with.

The courts in construing policies of insurance do not look for grounds of forfeiture, but rather incline to shut their eyes to them. *L. F. Ins. Co.* v. *West,* 76 Va. 575, 44 Am. Rep. 177.

As said by this court in *Ga. H. Ins. Co.* v. *Bartlett,* 91 Va. 305, 21 S. E. 476, 50 Am. St. Rep. 832: "These insurance policies abound with innumerable stipulations, forfeitures, and provisions hard to understand, and difficult of performance, and it is a well settled rule that they must be strictly construed against the insurer, and liberally in favor of the insured."

We do not appreciate the force of the contention that "the doors of fraud are thrown wide open" and the "moral hazard" greatly increased, because the insured in this case, a village undertaker, kept the list of his two sales from his stock of goods insured in a "yellow blank book," which he kept in his safe and produced after the fire, instead of keeping another and different "set of books" in which the two sales were listed, when the latter course would have presented no more "clearly and plainly a complete record of the business transacted" than the book he kept and produced.

· Upon the whole case, we are of opinion that the judgment of the Circuit Court should be affirmed.

*Affirmed.*