Statement.

## Richmond.

HOUFF & HOLLER v. GERMAN-AMERICAN INSURANCE CO.

January 13, 1910.

Absent, Buchanan and Harrison, JJ.

1. INSTRUCTIONS—*Referring Questions of Law to the Jury.*—It is error for the trial judge to refer to the jury the determination of a question of law raised by a hypothetical case stated in an instruction.

2. FIRE INSURANCE—*Iron Safe Clause—Inventory—General Footings Without Items.*—General footings of the value of each line of goods in a stock, taken from an itemized statement (not produced) of all of each line of such goods, without showing the items or their values, is not such a complete itemized inventory of the stock of goods on hand as is required by the "iron safe clause" of the fire insurance policy sued on in this action.

3. FIRE INSURANCE—*Iron Safe Clause—Account Books—Bank Book.*—A bank book in which is credited to the assured (a mercantile firm) all money collected during the existence of a policy of insurance, whether from accounts made prior to the inventory or for cash sales thereafter, moneys collected by one of the assured from a separate business, and moneys given to the assured by persons who desired him to give checks for their use, does not constitute a book showing clearly and plainly such a complete record of all sales and shipments, both for cash and credit, as is required by the "iron safe clause" of the fire insurance policy sued on in this action.

Error to a judgment of the Circuit Court of Augusta county in a proceeding by motion for a judgment. Judgment for the defendant. Plaintiffs assign error.

*Affirmed.*

The opinion states the case.

*Charles & Duncan Curry* and *R. S. Ker,* for the plaintiffs in error.

*Hanckel & Hanckel, A. C. Gordon,* and *Joseph A. Glasgow,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The appellants brought suit in the Circuit Court of Augusta county against the German-American Insurance Company to recover the amount of a fire insurance policy for $1,000. The case went to a jury, which gave a verdict for the plaintiffs for the full amount of the policy, which upon motion of the defendant was set aside, and at a subsequent trial there was a verdict and judgment for the defendant.

With respect to the second trial no error is assigned, so that we have only to consider the bills of exception taken to the rulings of the court upon the first trial, and to determine whether or not the court erred in setting aside the first verdict.

Upon the first trial there was evidence which proved, or tended to prove, that in the year 1907 the plaintiffs conducted a general mercantile business in the county of Augusta, and that on the 2d of February of that year the German-American Insurance Company issued a fire insurance policy for $1,000 on their stock of goods; that at that time the plaintiffs already held two policies on their stock, one for $1,500, issued to them by the Hartford Insurance Company, and the other for the same amount issued by the London Mutual. Taylor & Perry, of Staunton, Va., were the general agents of the German-American Insurance Company, and by letter dated the 1st of February, 1907, plaintiffs applied to them for insurance, which was issued on the next day, and at the time this application was made to them as agents they were asked to come and examine the stock of goods plaintiffs then had on hand in their store. They did not, however, examine the stock until the latter part of September, 1907, and on the night of the 6th of November of the same year the entire stock of goods, estimated to be of the value of $5,455.18, was completely destroyed by fire.

The examination of the stock above referred to was made by William J. Perry, the active member of the firm of Taylor & Perry. Plaintiffs had taken an inventory of their stock on January 7, 1907, which showed that at that time it was of the value of $5,455.18, and this inventory and the books and files showing a complete record of their business from the date of the inventory to that time were shown to Mr. Perry and carefully examined by him, and after having looked into and investigated everything he expressed himself as perfectly satisfied, and in fact was so well satisfied that he told plaintiffs that they did not have sufficient insurance to cover their stock, and urged them to take out more insurance in his company. The company, after it had received notice of the character of records that plaintiffs had and kept of their business, through their general agents, Taylor & Perry, made no objection whatever to their inventory or to the mode of keeping their records, and in effect gave them to understand that the company was perfectly satisfied, and petitioners relying upon this assurance of the company's agents, and upon the fact that they were not asked to change their mode of keeping records after full notice, plaintiffs in no way changed their mode of bookkeeping, and their entire stock of goods was consumed by fire on the 6th day of the following November, and plaintiffs never received any intimation of any objection to the character of their records and to their manner of keeping the same until some days after the fire.

These are such of the facts which the evidence of plaintiffs tended to prove as we deem material to the questions which we shall discuss, and upon which our judgment will depend.

The defendant relied for its defense upon the following clauses of the policy:

"1st. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail

within thirty days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"2d. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments both for cash and credit, from date of inventory as provided for in first section of this clause, and during the continuance of this policy.

"3d. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

There was evidence tending to show that an inventory of the stock on hand was taken on the 7th of January, 1907, as follows: "Shoes, 1,200 prs., cost $1,800.00; gloves, 70 prs., $70.00; dry goods and notions, $1,400.50; groceries, tobacco, cigars and drugs, $1,635.35; crockery, queensware, agateware, $250.00; tinware, $68.00; paint and oils, $71.00; hats, $174.50; stove fixtures, scales, $60.00; showcase, oil cans, etc., $40.00; produce, eggs, chickens, ginseng, furs, walnut kernels, $98.00. The total aggregating $5,662.35.

It is conceded that this inventory is not such a one as a skilled bookkeeper, or careful, painstaking business man would have taken; but it is contended that all that is necessary, and all that the law requires, is that the amount of stock on hand could be ascertained and understood from the inventory by anyone with reasonable intelligence, and that a strictly literal compliance with what is known as the "iron safe clause" of the policy is not ne-

cessary; that the test is simply whether or not a man of ordinary intelligence would be able, from the inventory, to say what amount of stock petitioners had on hand at the time of the inventory; citing in support of these views *North British & Mer. Ins. Co.* v. *Edmondson,* 104 Va., 486, 52 S. E. 350.

It is also conceded that the plaintiffs did not keep a record ot daily sales; but it is claimed that their bank book, which was exhibited as evidence, showed the cash sales which they had made from the date of the inventory until the happening of the fire; that plaintiffs kept a record of all their credit sales, which appear in the ledger; that while plaintiffs did not enter upon the ledger the purchases they made, they kept invoices showing all the purchases, instead of keeping a ledger for that purpose; and that while these invoices were destroyed they were duplicated and from these records the stock on hand at the date of the fire was ascertained to be $5,455.18.

There was evidence, on the other hand, to show that the bank account did not discriminate between deposits made by the firm of Houff & Holler, on account of their mercantile transactions, and those made by the individual members of the firm in their private capacity; and with respect to the failure to keep accurate books of accounts conforming strictly to the terms of their covenant, plaintiffs again rely upon the case above cited of *North British & Mer. Ins. Co.* v. *Edmondson,* where it is said: "The covenant and agreement to keep a set of books showing a complete record of business transacted, including all purchases and sales both for cash and credit, together with the last inventory of the business, should not be interpreted to mean such books as would be kept by an expert bookkeeper or accountant in a large business house in a great city.   That provision is satisfied if the books kept were such as would fairly show a man of ordinary intelligence all the purchases and sales both for cash and credit."

This statement of the tendency of the evidence is sufficient for the purpose of determining whether or not the jury were properly instructed upon the first trial.

On behalf of the plaintiffs the court told the jury, among other things (3), "that if they believe from the evidence in this case that an inventory, substantially in accordance with the requirements of the policy, was made out by the plaintiffs, within the time prescribed by the terms of the policy sued on, that then this was a compliance on the part of the plaintiffs with the requirements on their part to make an inventory provided for in the policy; and the defense that the plaintiffs did not make such inventory provided for in the policy cannot be considered by the jury"; and (4) "that if they believe from the evidence in this case that the defendant company waived any of the requirements or conditions of the policy sued on, then the jury are instructed that such a waiver is equivalent to the performance by the plaintiffs of such requirements or conditions as the jury may believe from the evidence were so waived, and they are instructed that this waiver may have been made expressly or impliedly."

In the case of *Phoenix Ins. Co.* v. *Sherman, ante,* p. 435, 66 S. E. 81, a clause in a policy similar to the one under consideration was before this court. The inventory there relied upon was in almost every particular similar to that in this case, and this court held that "there is nothing unreasonable in the requirements of the 'iron safe clause' found in every policy of insurance issued on a shifting stock of merchandise. Under that clause the insurer has a right to such a compliance with its terms as will inform him during the life of the policy, fairly and intelligently, as to the stock of merchandise carried by the insured, and, in case of loss by fire, as to the stock of merchandise burned and the fair cash value thereof; and it is no hardship upon the insured to comply with this requirement of his policy. Any other rule would open wide the doors for the perpetration of frauds and the grossest impositions upon insurers." And after a discussion of many authorities it was held that the inventory was not a sufficient compliance with the covenants contained in the policy. That is a well considered case, and correctly states our view of the law.

It is apparent from the petition, the record and the briefs of counsel for plaintiffs in error that their chief reliance is upon the conduct of the agents of the insurance company when an examination was made of the stock of goods in September, 1907, and the company, through its agents, as is contended by plaintiffs in error, was made aware of the condition and amount of stock, and the manner in which the business was conducted; and this knowledge and acquiescence it is claimed constituted a waiver of the requirements and conditions of the policy sued upon and are equivalent to their performance.

Without undertaking to determine whether or not the circumstances relied upon by plaintiffs in error constitute an estoppel upon the company to rely upon the clause in the policy which has been quoted, or as a waiver, either express or implied, of the requirements and conditions of that clause—without even undertaking to say whether or not the circumstances relied upon tended to support the claim of waiver or estoppel; but assuming for our present purposes that the evidence had such tendency, and that the conditions could have been waived by the agents of the company, notwithstanding the provision of the policy that no agent should have power to waive any of its provisions or conditions, unless such waiver be written upon or attached to the policy, we shall proceed to the consideration of two instructions asked for on behalf of the defendant in error.

"The court instructs the jury that if they believe from the evidence the plaintiffs in this case adopted the following method of taking an inventory, that is, they took upon a piece of paper an itemized statement of all of each line of goods in their stock, and that they then footed up the value of said items, and that the footings so obtained and compiled they now present as their inventory, and that they did not preserve the pieces of paper on which the items and their values were recorded, but only preserved the general footings of each line of goods in their stock, then the court instructs the jury that this alleged inventory, based upon said footings, is not a complete itemized inventory

of the stock of goods on hand and provided for in the policy sued upon."

This instruction, we think, is a correct statement of the law as declared by this court in *Phoenix Ins. Co.* v. *Sherman, supra,* The court refused to give it in this form, however, but added thereto, after the word "footings" toward the close of the instruction, the words "is a matter for the jury to consider whether or," so as to make the concluding clause of that sentence read, "then the court instructs the jury that this alleged inventory, based upon said footings, is a matter for the jury to consider whether or not a complete itemized inventory of the stock of goods on hand and provided for in the policy sued upon."

Here was a hypothetical case stated. All of the facts upon which it was conditioned were set out, and the court was asked to tell the jury what was the law upon the facts as stated. If the court had refused that instruction, as asked for, because in its opinion it was erroneous in having omitted all reference to the waiver contended for by plaintiffs in error, such refusal might or might not have been proper, according as we determined whether or not there was sufficient evidence of waiver to justify an instruction from the court with respect to it; but the court did not reject it for that or for any other reason. Taking the hypothetical case, as it had been stated to the court by the defendant in error, the court declined to express to the jury its opinion as to the law arising upon those facts, and by its interpolation left the question of law upon which the opinion of the court had been asked to the decision of the jury. In this ruling of the circuit court we think there was error.

Defendant in error asked the court further to instruct the jury that "if they believe from the evidence the plaintiffs adopted the following method of keeping such books, as they claimed to have kept, to show sales made by them for cash or credit, that is, they deposited in the bank to their credit all money collected during the existence of the policy, whether from accounts that were made for goods sold prior to the alleged inventory, or

for goods sold for cash thereafter, and also deposited along with said sums to their credit in the same account moneys collected by Jos. W. Houff, one of the plaintiffs, from his farm, and also from a separate business in which he was interested, as a butcher, and also moneys collected by him in his business as postmaster, and also deposited in said account moneys that were left with him by individuals who desired the plaintiffs to give them a check for their uses, then said bank book does not constitute a book showing clearly and plainly a complete record of all sales and shipments, both for cash and credit, as is provided for in the policy sued upon in this case, and the production of such book did not constitute a substantial compliance with the terms of the policy."

But the court refused to give the instruction in the form above set out, but modified and gave it in the following words: "The court instructs the jury that if they believe from the evidence the plaintiffs adopted the following method of keeping such books, as they claimed to have have kept, to show sales made by them for cash or credit, that is, they deposited in the bank to their credit all money collected during the existence of the policy; whether from accounts that were made for goods sold prior to the alleged inventory, or from goods sold for cash thereafter, and also deposited along with said sums to their credit in the same account moneys collected by Jos. W. Houff, one of the plaintiffs, from his farm, and also from a separate business in which he was interested as a butcher, and also moneys collected by him in his business as postmaster, and also deposited in said account moneys that were left with them by individuals who desired the plaintiffs to give them a check for their uses, it is for the consideration of the jury as to whether said bank book does constitute a book showing clearly and plainly a complete record of all sales and shipments, both for cash and credit, as is provided for in the policy sued upon in this case, and the production of such book did or did not constitute a substantial compliance with the terms of the policy."

For the reasons given in the consideration of the modification of instruction No. 2, we are of opinion that the modification of instruction No. 3 was also erroneous.

Upon the whole case we are of opinion that there was error in the first trial which rendered it proper for the circuit court to set aside the verdict and judgment then rendered, and that as there was no error in its judgment on the second trial it must be affirmed.

*Affirmed.*