# Richmond

SOUTHERN HOME INSURANCE COMPANY OF THE CAROLINAS
v. CARRIE M. BOWERS, ADMINISTRATRIX.

January 14, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*Alexander H. Sands*, for the plaintiff in error.

*Irby Turnbull* and *F. C. Bedinger*, for the defendant in error.

Epes, J., delivered the opinion of the court.

This case is here upon a writ of error to a judgment of the Circuit Court of Mecklenburg county, in favor of Carrie M. Bowers, administratrix of Sandy W. Bowers, deceased, in an action brought by her against Southern Home Insurance Company of the Carolinas to recover upon a fire insurance policy.

Sandy W. Bowers was the owner of a dwelling house in Mecklenburg county, Virginia. On April 3, 1928, the defendant issued to him a fire insurance policy insuring this dwelling for $1,500.00, and the personal property therein for $1,000.00

On the same day Bowers took out a policy in the Pacific Fire Insurance Company for $1,500.00 on the building and $1,000.00 on the personal property; and at that time this property was also insured by the Hartford Fire Insurance Company under a policy issued in 1925 for $8,000.00 on the building and $2,000.00 on the personal property. At the time of the fire all three of these policies were in force. The facts mentioned in this paragraph have no bearing on the

question here at issue, but they form the background against which this litigation is projected.

On November 29, 1928, this property was totally destroyed by fire.

At the time of the fire Sandy Bowers was working in the island of Bermuda. Notice of the fire was given to Miss Annie Field, the agent of the defendant at Chase City, by whom the policy had been issued. Within a short time Mr. R. M. Friend of the Southern Adjustment Bureau, the representative of the defendant, came to see Carrie Bowers, the wife of the insured, and viewed the ruins. He told her he could not negotiate with her with reference to the matter unless she had a power of attorney from Sandy Bowers empowering her to act for him.

Carrie Bowers had a power of attorney drawn up and sent to Sandy Bowers, who executed it and returned it to her about the middle of December, 1928.

Mr. Friend then requested the execution of a non-waiver agreement before proceeding further with an investigation of the matter for the defendant. Carrie Bowers refused to sign this agreement, acting under the advice of her counsel, Mr. F. C. Bedinger.

While negotiations with reference to the signing of the non-waiver agreement were taking place Sandy Bowers died, on January 28, 1929, in Bermuda; and on or about February 15, 1929, Carrie Bowers qualified as the administratrix of his estate.

On February 18, 1929, acting under advice of her counsel, Mr. Bedinger, Carrie Bowers reconsidered and signed in duplicate the non-waiver agreement; and her counsel mailed it to Mr. Friend.

On February 22, 1929, Mr. Friend signed this agreement on the part of the defendant, and mailed one copy thereof to counsel for Carrie Bowers, writing him that he or some other adjuster would come to see him at an early date.

After this Mr. Friend went to Mecklenburg county and there had a short interview with Mr. Bedinger with reference to this matter, but what was said or done at that time does not appear from the record. The following correspondence then took place between Mr. Bedinger and Mr. Friend:

*"March 19, 1929.*

"DEAR MR. FRIEND:

"You were here on March 2nd and had a short talk with me about the fire loss of Sandy W. Bowers, of Skipwith, Virginia. It has now been seventeen days since you looked into this matter and I am at a loss to understand why you do not write me something about it. I will greatly appreciate your prompt attention to this matter. I will be greatly obliged to you if you will write me frankly what you propose to do as we do not see why you should delay the matter any longer. We wish the matter brought to a conclusion promptly and I will certainly appreciate a word from you at once.

"Yours very truly,
"(Signed) F. C. BEDINGER."

*"March 22, 1929.*

"DEAR MR. BEDINGER:

"I have for acknowledgment your favor of the 19th instant having reference to the fire of Sandy W. Bowers, of Skipwith, Va., and in reply would advise that I have made my report to the companies and can only refer you to the terms and conditions of the policies if any claim is to be made thereunder.

"Yours very truly,
"(Signed) R. M. FRIEND, *Manager.*"

So far as the record shows all negotiations between the parties with reference to a settlement by the defendant with the plaintiff ceased with this letter.

Up to this time no proof of loss had been filed, and none

was filed until August 6, 1929 (received by the company August 9). In explanation of why no proof of loss had been filed Carrie Bowers testified as follows:

"She (Miss Annie Field, the agent for the defendant at Chase City) told me she had sent in all the proofs and filed the copy the day she came down to see the ruins. She said: 'She did not know why they had not settled; they had not refused to settle and she was satisfied they would settle. * * Miss Annie told me everything had been done that should be done.'

"I cannot recall (when she told me this), but (it was) soon after we did not hear from the insurance company. It was before Mr. Friend came down and after Mr. Friend came down. Miss Annie told me every time she had filed all the papers, and she did not know any reason the companies had not adjusted the fire, but she was sure the companies would do what was right."

However this may be, Mr. Bedinger testifies that in May, 1929, he found that no proof had been filed. In reply to a question by Mr. Turnbull, of counsel for Carrie Bowers, asking whether he could account for the delay from that time until August 6, in filing proof of loss, Mr. Bedinger replied: "Yes, in a measure. You and I, both, were working on them at that time. It was almost impossible to get the figures. We had to wait a long time for Carrie Bowers to fix her estimate of it. She got it wrong once or twice and we could not get it ready. We did all humanly possible to get it in."

Upon receipt of proof of loss on August 9, 1929, the company merely acknowledged receipt thereof.

The policy here in question has six consecutive paragraphs in it entitled: "Requirements in Case of Loss," "Appraisal," "Company's Option," "Abandonment," "When Loss Payable," and "Suit." We are here concerned only with the first named and the last two named, the material parts of which read as follows:

*"Requirements in Case of Loss.* The insured shall give immediate notice in writing to this company, of any loss or damage \* \* stating the quantity and cost of each article and the amount claimed thereon; and *the insured shall within sixty days after the fire, unless such time is extended in writing by this company,* render to this company a proof of loss, signed and sworn to by the insured, stating \* \* \*." (The italicized words are printed in bold-faced black type.)

*"When Loss Payable.*—The amount of loss, or damage, for which this company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this company and ascertainment of the loss or damage is made either by agreement between the insured and this company expressed in writing or by the filing with this company of an award as herein provided."

*"Suit.*—No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity *unless* all the requirements of this policy shall have been complied with, *nor unless* commenced within twelve months next after the fire." (Italics ours.)

In the trial court the defendant set up three major defenses:

(1) That the policy had been violated in respect to other and additional insurance without endorsement in writing so permitting; (2) that the insured had failed to comply with the terms and conditions of said policy in respect to filing sworn proofs of loss within the time stipulated therein; (3) that the actual cash value of the property was far less than the amount claimed by the plaintiff in the declaration.

The company introduced evidence tending to prove each of these defenses, especially the first; but the issues of fact under the first and third defenses were found against the defendant by the jury; and as stated by the insurance com-

pany in its brief, the single question here presented to the court by the plaintiff in error under its several assignments of error is: Did the failure of Sandy Bowers and his administratrix to file proof of loss prior to August 6, 1929, bar recovery under the provisions of the policy above quoted. The trial court held it did not.

The only reported case in which this question has been passed upon by this court is *North British, etc., Ins. Co.* v. *Edmundson,* 104 Va. 486, 52 S. E. 350, 352. An examination of the record shows that in that case the paragraph corresponding to the paragraph entitled "Suit" in the policy here before us read:

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity *until* after full compliance by the insured with all the foregoing requirements, nor *unless* commenced within twelve months next after the fire."

The difference in language is that in the instant case the language is "unless all the requirements * * have been complied with," while in the *North British Case,* and in most of the cases which have arisen in other jurisdictions, the language has been *"until after* full compliance * * with the foregoing requirements," or words to that effect following "until after."

There are cases from other jurisdictions in which the court has held that, where a policy provides that the insured shall, or must, file with the company proof of loss "within" a given time after the fire, and also a provision that no suit or action shall be brought on the policy "until after" full compliance with all the requirements of the policy, failure to file proof within the time specified is a complete bar to a recovery. *Teutonia Ins. Co.* v. *Johnson,* 72 Ark. 484, 82 S. W. 840; *White* v. *Home Mut. Ins. Co.,* 128 Cal. 131, 60 Pac. 666; cases cited in note, L. R. A. 1915F, page 1215. The legal reasoning in these cases is strong and logical, and

is followed and ably presented in the brief of the plaintiff in error.

However, in an effort to do substantial justice between the insured and the insurer, the great majority of the courts, including the Virginia court, have with a broad sweep of the hand wiped aside what they regard as a technicality and held otherwise. These courts hold that where a policy contains a provision with reference to the filing of proof of loss such as is contained in the policy here before us, and in another paragraph, separated by several paragraphs from the provision as to filing proof of loss, provides that no suit shall be brought "until after" full compliance with all the requirements of the policy, this is not to be construed as providing that the failure to file proof of loss within the required time shall work a forfeiture of the policy, or be a bar to an action thereon. *North British, etc., Ins. Co.* v. *Edmundson,* 104 Va. 486, 52 S. E. 350; 5 Joyce on Ins. (2 ed.) section 3282 and cases there cited; note, L. R. A. 1915F, page 1215, *et seq.,* and cases there cited; 33 C. J., Insurance, section 661. See also *Raleigh Hdw. Co.* v. *Williams,* 106 W. Va. 85, 144 S. E. 879, where the pertinent word is *"unless"* as in the case at bar.

It is contended by the plaintiff in error that these cases are not controlling in this case because the word here used is "unless" instead of "until after." But we are of opinion that the change from "until after" to "unless" in no way changes the meaning of the paragraph. The reasoning of the court on this point in *Raleigh Hdw. Co.* v. *Williams,* 106 W. Va. 85, 144 S. E. 879; *Teutonia Ins. Co.* v. *Johnson,* 72 Ark. 484, 82 S. W. 840; and *White* v. *Home Mutual Ins. Co.,* 128 Cal. 131, 60 Pac. 666, is irrefutable.

If full compliance with the provisions of a policy includes the filing of proof of loss *within* sixty days after the fire; the provision that "no suit * * shall be sustainable * * *until after* full compliance" with all the requirements

of the policy bars the bringing of a suit as effectually as does a provision that "no suit * * shall be sustainable * * *unless* all the requirements of this policy have been complied with."

If full compliance requires filing of proof of loss in sixty days, then, if no proof of loss has been filed within sixty days, it is thereafter utterly impossible to comply with all the requirements of the policy; and if suit cannot be instituted *until after* this requirement has been fully met, then after the lapse of sixty days without proof of loss being filed, the right to bring suit on the policy necessarily is barred.

■ The only escape from this conclusion is to construe the policy as not requiring that proof of loss shall be filed *within* sixty days, but as requiring that it shall, unless waived, be filed before suit brought. This is what we understand the holding of the majority of the courts to be, with this proviso, however: If the policy provides that the company cannot be required to settle until sixty days after proof of loss filed, and that no suit shall be brought unless brought in one year, then, unless the company has waived filing of proof of loss, a failure to file proof of loss until within sixty days of the expiration of the one year period will bar an action on the policy.

■ It is without profit now to consider whether the Virginia court in 1905, in *North British, etc., Ins. Co.* v. *Edmundson, supra,* adopted the correct construction of such insurance contracts or not. Since that time insurance contracts made in Virginia in this, or susbtantially the same language, must be construed as having been made with that interpretation placed upon the language by the parties. If, perchance, it should be said that in that case the court wrote a new contract for the parties, to now change the construction placed upon this or substantially the same provision, after it has been so long acted upon, would be again to write a new contract for the parties.

■ The point is further made by the plaintiff in error that the court erred in leaving to the jury the question whether the proof of loss was filed in a reasonable time. The instruction given by the court reads:

"Instruction D.—If the jury believe from the evidence that the plaintiff *offered to the defendant a proper proof of loss within a reasonable time,* under all the circumstances of the case, after the fire, and not later than sixty days prior to the end of twelve months from the date of the fire, then they are instructed that such offer of proof was in full time, even though it was made more than sixty days after the date of the fire."

This was technical error. Even if the policy is to be construed as providing that proof of loss must be filed within a reasonable time, where there is no conflict in the evidence, what is a reasonable time is a question of law for the court, not a question of fact for the jury; and there was no conflict of evidence on this point. In approving the above instruction in *North British, etc., Ins. Co.* v. *Edmundson, supra,* we do not understand the court to have established a contrary rule.

■ But this was not reversible error in this case. As we understand the rule which has been established by the courts holding the majority view above mentioned, if in such a case as this proof of loss is filed before suit brought, and within ten months from the date of the fire, then failure to have filed it sooner does not bar a recovery, unless, perhaps, it be shown that the delay for more than sixty days has in some substantial way prejudiced the rights of the insurance company; which is not shown in the instant case.

What is herein said must be understood as applying strictly to filing proof of loss, and not to other requirements of the policy.

We have been cited by the plaintiff in error to the construction placed by the court upon the statute construed in

*O'Neil* v. *City of Richmond*, 141 Va. 168, 126 S. E. 56, and upon the bill of lading clauses construed in *Liquid Carbonic Co.* v. *Norfolk & Western Ry. Co.*, 107 Va. 323, 58 S. E. 569, 13 L. R. A. (N. S.) 753; *Atlantic Coast Line R. Co.* v. *Bryan*, 109 Va. 523, 65 S. E. 30; and *Va. Car. Chem. Co.* v. *So. Express Co.*, 110 Va. 666, 66 S. E. 838. The plaintiff in error contends that these cases sustain its contention that by the change of "until after" to "unless" it has made the failure to file proof of loss within sixty days a bar to recovery on the policy. The sentence construed in the last named case reads: "In no event shall the Southern Express Company be liable for any loss or damage unless the claim therefor shall be presented to them in writing at this office within thirty days after this date."

This is typical of the sentence in the statute, or bill of lading, construed in the other three cases last above cited. In each instance the very sentence which provides for the filing of notice within a given time, provides also that the failure to file within that time shall bar a recovery. Were the insurance companies to so change their policies as to stipulate in the same direct, plain and explicit manner that failure to file proof of claim within sixty days should bar a recovery, these cases would be in point; but they are not authority for the contention that by merely changing "until after" to "unless" in the suit clause above quoted, the meaning of the contract has been changed.

■ The plaintiff in error also points our attention to section 4221 of the Code, which requires the insurer upon application to furnish forms for proof of loss, and to section 4227a of the Code (enacted in 1918), which provides in part:

"Where the policy of insurance requires the proof of loss to be filed within a specified time, all time consumed in an effort to adjust the loss is not to be considered as a part of such time."

This provision is a wise safeguard the legislature has thrown around the insured in case an insurance company should draft a policy contract which succeeded in doing what the court held had not been done in the policy construed in *North British, etc., Ins. Co.* v. *Edmundson, supra*. If, however, the legislature had intended to change the rule as laid down in that case, it is reasonable to suppose that it would have done so in some clearer and plainer manner than by the inference which the plaintiff in error seeks to draw from the enactment of this statute.

It is useless here to discuss the act of 1928 (Acts 1928, pages 763-766, chapter 256), adopting a standard policy, as the policy here in question was written before that act became effective.

*Affirmed.*