# Richmond

## THE SEABOARD FIRE AND MARINE INSURANCE COMPANY OF NEW YORK v. E. L. HURST, TRADING AS HURST OIL COMPANY.

March 3, 1947.

Record No. 3120.

Present, Holt, C. J., and Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Fred E. Martin,* for the plaintiff in error.

*W. R. Ashburn,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

E. L. Hurst, trading as the Hurst Oil Company, instituted an action against the Seaboard Fire and Marine Insurance Company of New York, on a policy of theft insurance covering an oil truck, for $650, the face of the policy. The case was tried before a jury which rendered a verdict for the full amount in favor of the plaintiff, and judgment was entered thereon.

On the 9th day of December, 1942, the local agent for the defendant insurance company at Norfolk sold to the plaintiff what is commonly called a fire and theft policy on a 1935 Dodge truck, to run for a period of one year. One Raymond Bateman was the driver of this truck, and it was customary for him, as a matter of convenience, to drive the truck to his home at night and drive it to work the next morning.

On March 12, 1943, at the close of work, Bateman drove the truck to his home and parked it beside the house as was

his custom. That night he went to a show with a young lady who lived across the street from him. He returned around 9:30 and retired around 11:00 p. m. Just before he retired the truck was there. When he went for the truck after breakfast the next morning, which was March 13, he found that the truck had been taken during the night. He immediately telephoned his employer, Mr. Hurst, and told him of the disappearance of the truck, and Hurst immediately notified both the city and State police departments.

Bateman had the ignition key in his pocket. Two other former employees also had ignition keys to this truck. On the same morning the truck was discovered by another employee of Hurst who was making a delivery of oil at Virginia Beach. It appeared to be considerably damaged and was located on the Virginia Beach highway some two miles from Virginia Beach. Afterwards it was put in the garage where the plaintiff usually had his truck repair work done.

The local agency of the defendant company was notified and arrangement was made to have the Fire Companies' Adjustment Bureau investigate and handle the claim. A Mr. Blick, one of the adjusters, went with the plaintiff to the garage and there, with the service manager, made a preliminary examination of the truck. The ignition wires were examined and it was found that they had not been tampered with as is usually the case where a stolen vehicle has to be started without the ignition key.

Blick made a report to the defendant on March 27, in which he stated that the extent of the damage was still unknown, and that he was further investigating the case. Hurst testified that the cost of repairs exceeded the full amount of the policy.

Blick almost immediately reached the conclusion that the truck had not been stolen within the meaning of the policy and it was upon that ground alone that the company denied liability. Blick based his conclusion upon the fact that Bateman had an ignition key in his possession and upon the further fact that the ignition wires had not been crossed

for the purpose of starting the motor. He did not at that time inform the plaintiff of the conclusion he had reached.

Blick's employment with the Adjustment Bureau was terminated on April 14, 1943, and the plaintiff inquired as to the reason for the failure to settle the claim.

Prior to the expiration of the sixty days allowed for the filing of proof of loss the plaintiff had been advised of the reason why the company declined to pay.

Around the early part of July, 1943, after the expiration of the sixty days, Mr. Frazier, a special agent for the defendant company, went to see the plaintiff and told him the company denied liability because it did not believe the truck had been stolen, but that in order to settle the matter the company would receive proof of loss and pay him $100, and that he could either accept the $100 or institute his action. He refused the $100.

Bateman, the driver of the truck, testified that he did not take the truck out after he got home from work on the night in question, that no other person with his knowledge or consent drove it, and that he was not driving it when it was wrecked. This testimony of Bateman was not contradicted.

After the first report of Blick no other attempt was made by the insurance company to ascertain the extent of the damage to the truck, the company having concluded that no theft of the truck had been committed.

The defendant based its sole defense under the pleadings on the failure of the plaintiff to file a proof of loss within sixty days, this being one of the provisions of the policy. The plaintiff contended that this provision had been waived. This issue was very clearly submitted to the jury under instructions Nos. 2 and 3, and resolved in favor of the plaintiff.

At the trial of the case there was no defense based upon the contention that the truck had not been stolen, though this issue was submitted to the jury also and resolved in favor of the plaintiff. The evidence that the truck had been stolen was not even contradicted by any witness.

The principal assignment of error is that there was no

proof of loss filed within sixty days after the loss in accordance with the express requirements of the policy, and that there was no evidence of a waiver of this provision. For these reasons the insurance company claims that its defenses which were raised by two special pleas should have been sustained and the case withheld from the jury.

On the other hand, the plaintiff contends that a waiver of the requirement of proof of loss was a question for the jury under the evidence. This was the view of the trial court.

According to the record, as already stated, the uncontradicted evidence clearly showed that the truck had been stolen. The theft was not made an issue by the pleadings in the court below. The only defense there was that which was raised in the two special pleas, namely, that no proof of loss had been filed within the prescribed time. In any event the finding of the jury under instruction No. 1 puts the question at rest. The jury has found that the truck was stolen.

The real issue in the case—that is, whether there had been a waiver—was submitted to the jury in this instruction:

"The court instructs the jury that the defendant contends that the plaintiff is not entitled to recover because he failed to file a 'proof of loss' in accordance with one of the provisions of the policy. On this issue the jury are instructed that the policy provision imposing this requirement may be waived by the insurance company and is deemed in law to have been waived by any acts or conduct of the agents of the insurance company which are reasonably calculated to cause the insured to believe that it was not necessary to prepare and file such a paper, *or by a denial of liability on any other ground within the time in which such a paper could have been filed according to the policy provision.*" (Italics supplied.)

If there was sufficient evidence to sustain that instruction the case necessarily will have to be affirmed.

■ ■ What constitutes waiver is clearly set forth in 29 Am. Jur., Insurance, sec. 1139, p. 855. There it is said: "In general, failure or delay in giving notice or furnishing proofs of loss is waived by any conduct on the part of the

insurer or its authorized agent inconsistent with an intention to enforce a strict compliance with the insurance contract in such regard. As stated, conduct which amounts to a waiver of a condition for the furnishing of proofs of loss is that which lulls the insured into a feeling of security and renders it against good faith for the insurer subsequently to raise the objection that such proofs were not furnished, or if furnished, that they were insufficient. * * * "

The general rule supported by the weight of authority is that if the insurance company denies liability for a loss and refuses to pay for that reason, and not for the reason that there has been no proof of loss filed by the claimant, it waives the right to insist on the filing of the proof of loss.

In 45 C. J. S., Insurance, sec. 982 (6), pp. 1209, 1210, 1211, the principle is stated in this language: "Broadly stated, the rule is that if the company denies liability for a loss, and refuses to pay it either for that or another reason, placing its refusal on a definite ground other than want of notice and proofs of loss or a defect in their form or substance, it waives the right to insist on the failure to give notice and make requisite proofs as a defense to an action on the policy, although it has been said that denial of liability is evidence of waiver rather than a waiver itself. More specifically, where the company, within the time for presenting proofs of loss, denies liability or refuses to pay the loss, it thereby waives the necessity for proofs.

"Similarly a denial of liability or a refusal to pay on any other specified ground will be a waiver of objection because of defects in the proofs furnished. So, if the company, after defective or incomplete proofs are secured, denies liability, no further proofs need be furnished. In some jurisdictions it has been held that a denial of liability or a refusal to pay not predicated on the failure to furnish proofs is a waiver of any objection on that ground, irrespective of whether the denial precedes or follows the time within which proofs should have been furnished; * * * "

Cases from many jurisdictions are cited in support of the text, including three cases from Virginia.

See also Annotations, 22 A. L. R. 408, and 108 A. L. R. 901.

In *Wade* v. *Mutual Benefit Health, etc., Ass'n,* 115 W. Va. 694, 177 S. E. 611, the court held: "There is a familiar rule of law that proof of loss under a policy of insurance need not be filed where the insurer within the period in which the proof should be filed denies liability."

In *Lucas* v. *Pittsburgh Life, etc., Co.,* 137 Va. 255, at page 269, 119 S. E. 109, we said: "We are of opinion that the 1st ground is not well taken. In view of the letter of this defendant, in reply to the letter of the beneficiary informing such defendant of the death of the assured, in which reply nothing was said requiring proof of such death, but the position was taken that this defendant was not liable upon another ground, wholly independent of such proof, we think that such defendant waived all objection to the insufficiency of the proof of the death. *West Rockingham Mut. Fire Ins. Co.* v. *Sheets & Co.,* 26 Gratt. (67 Va.) 854."

Again in *Provident Life, etc., Ins. Co.* v. *Nicholson,* 157 Va. 345, 160 S. E. 5, the same principle was applied.

See also, *Southern Home Ins. Co.* v. *Bowers,* 157 Va. 686, 161 S. E. 914, and *North British, etc., Ins. Co.* v. *Edmundson,* 104 Va. 486, 52 S. E. 350.

It has also been held that where it is perfectly obvious that no proof of loss would have availed the claimant, whether filed before or after the required time named in the policy, none will be required. The claimant will not be required to do a vain thing. *National Union Fire Ins. Co.* v. *Burkholder,* 116 Va. 942, at p. 948, 83 S. E. 404, and *Yanago* v. *Aetna Life Ins. Co.,* 164 Va. 258, 268, 269, 178 S. E. 904.

The evidence of waiver was sufficient to carry that issue to the jury. There was testimony that the insurance company denied liability before the sixty-day period had expired. Hurst, when testifying, gave the following answer to the following question:

"Q. At the time they commenced work repairing the truck had the insurance company refused to pay the claim?

"A. Yes, sir."

On May 4, 1943, there is a charge by Luhring Motor Company against Hurst for a substantial amount of work performed on the truck which consisted mainly of an item of replacing the radiator core and repairs to the headlights. Therefore, according to Hurst, the insurance company had denied liability on or before May 4, 1943, which was less than sixty days after the truck had been stolen.

As tending to contradict the foregoing testimony of Hurst, counsel for the defendant, on cross-examination, elicited from him certain answers that might or might not have weakened his former testimony. All of his testimony and its credibility were for the jury and they no doubt considered the whole of it and gave credence to his statement that the insurance company had denied liability on or before May 4, 1943, the date upon which the first charge for work was made. This, of course, was within the sixty-day period.

In any event, the insurance company definitely denied liability in June, 1943, and offered to waive the filing of proof of loss. Mr. Frazier, the adjustment agent, offered to settle with Hurst for $100, but still denied that the insurance company was liable for theft because it thought there had been no theft. He told Hurst that if he would agree to take the $100 the insurance company would receive a proof of loss at that time which was more than sixty days from the date of the loss. Under this testimony, which was not contradicted, the jury could have found that the insurance company had waived its right to require proof of loss within the sixty days.

In addition to this, Mr. Frazier further testified that even if Hurst had prepared and submitted proper proof of loss within the time, the insurance company would not have paid him in any event.

The record discloses that from the beginning the agents of the insurance company concluded that no theft had been committed, and that the company was not liable for the loss.

The insurance company manifested no interest in proof of loss. It was interested in a denial that there had been a theft. When Hurst and Frazier could not agree on a settlement Hurst was instructed to proceed in accordance with the provisions of the policy. He was not told at that time to file a proof of loss or that it was too late to file one. The insurance company, prior to the present action, never relied upon the failure of Hurst to file proof of loss in any of the negotiations. Its contention that the policy provision had been violated was an after-thought. There is no merit in the other assignment of error.

The case has been correctly decided, and the judgment is accordingly affirmed.

*Affirmed.*