RUSSELL C. ROBERTS, Plaintiff-Appellee, *v.* RALPH BUSKE, Defendant-Appellant.

(No. 71-194;

Fifth District—July 10, 1973.

Meyer and Meyer, of Belleville, (George R. Ripplinger, Jr., of counsel,) for appellant.

H. B. Tunnell, of Litchfield, for appellee.

Mr. JUSTICE CREBS delivered the opinion of the court:

The Circuit Court of Montgomery County sitting without a jury, rendered judgment for $358, plus costs, in favor of plaintiff and against defendant. The issue involved is whether a renewal of an automobile liability policy was accepted by defendant, thereby imposing liability upon him for the annual premium pro-rated up to the time the policy was returned and cancelled.

The facts are undisputed. In September, 1969, plaintiff, an insurance agent, sent defendant a policy which was a renewal of one defendant's father had previously held. Defendant had not ordered or requested issuance of this policy, but he accepted it and paid the premium. In September, 1970, just prior to the expiration date of the policy, a second unsolicited renewal was sent to defendant and attached to it was a printed notice stating that if defendant did not wish to accept it he must return it or be liable for the premium. Defendant made no response either to this notice or to two subsequent bills mailed to him. Finally, in December, the agent telephoned defendant personally to inquire about the premium. Defendant informed him that he had purchased a policy from another company in August and that since he had not ordered the renewal he felt no obligation to pay for it. The policy was then returned to the company and cancelled, resulting in a loss to the agent for the pro-rated portion of the premium which he had advanced.

In his brief plaintiff appears to accept the fact that the basic requisites of a valid contract are equally applicable to an insurance contract, and that a bare offer imposes no liability upon the person to whom it is made until it is accepted. However he argues that because defendant had previously accepted a renewal policy and thereafter paid the premium his silence in replying to the second renewal constituted an implied acceptance thereof and obligated him to pay the premium.

There do not appear to be any Illinois cases directly in point on this issue. However, other jurisdictions have considered the question. In *Preferred Risk Insurance Co. v. Central Surety & Insurance Corp.* (D.C. Ark.), 191 Fed. Supp. 797, the facts were almost identical. After purchase of one policy the insured accepted a renewal and paid the premium. Prior to the expiration of the renewal period another renewal was sent

to insured·but she did not pay the premium, nor did she return the policy, or reply to two subsequently sent bills. She had purchased a different policy from a different company. During this time she had an accident. The·second insurance company settled on its policy and then sued the first company to recover its pro-rata share of the loss on the theory that its policy was also effective. The court held that the unsolicited delivery of the renewal policy was a mere offer; that insured's failure to return the policy or pay the premium did not create an implied acceptance; that her purchase of another policy from another company strongly indicated her rejection of the first company's offer; and that, therefore, no valid contract of insurance existed with the first company.

■■ In *Phelan v. Everlith*, 22 Conn. Sup. 377, 173 A.2d 601, a second renewal policy was sent to insured and ignored. The agent, as in the case before us, sought to recover that portion of the premium which he advanced to the insurance company. The court stated that a single transaction does not establish a course of conduct or course of dealing sufficient to constitute an implied acceptance based on silence, and that acceptance cannot be presumed from a mere failure to decline a proposal.

We agree with these principles and believe them applicable to the facts now before us. Plaintiff had sent only one other renewal to defendant and that was for a policy previously held by defendant's father. He stated that he also sent a copy of the policy to defendant's mortgagee, but that adds little to his argument. Where property is mortgaged it·is normal procedure to provide the mortgagee with a copy of the policy, attaching a mortgage clause so that the latter may be assured that his interests are protected. The same procedure would have been followed by any other insurance company and was not a singular service rendered by plaintiff. Plaintiff also argues that if defendant had had an accident he, undoubtedly, would have looked to plaintiff's company for coverage. This is a pure assumption, and irrelevant, and there is authority to the contrary. (*Standard Casualty Co. v. Boyd,* 71 N.W.2d 450, 75 S.D. 617.) Defendant was covered by another policy issued by·another company and he would have no reason to look to plaintiff's company for coverage.

■■ We recognize that the practice of sending renewals oftentimes serves the best interests of an insured; but, likewise, it serves the best business interests of the insurance agent. And it is the agent, as the ·offeror, who·must assure himself that his offer has been accepted. Under ordinary circumstances silence cannot be relied upon to establish an acceptance of an offer to enter into a contract. (Corbin on Contracts, Vol.

1, sec. 72.) We do not preclude the possibility of an implied acceptance being established under certain circumstances. However, as held in the cases above cited, we cannot find that acceptance of a single previous renewal in itself is sufficient to constitute an implied acceptance of a second renewal based solely on the silence of the offeree. Not only is the mailing of a first renewal policy insufficient to show a previous course of dealing between the parties, the plaintiff presented no evidence regarding the customary trade practice, if any, in situations similar to that presented here. It is obvious that plaintiff feels abused in that defendant did not inform him that he had bought another policy, but a simple telephone call would have revealed this fact and there would have been no reason for plaintiff to have incurred the loss caused by his unwarranted assumption.

The judgment of the Circuit Court of Montgomery County is reversed.

Reversed.

EBERSPACHER, P. J., and JONES, J., concur.