EMPLOYERS MUTUAL CASUALTY COMPANY *v.*
PIGEON CREEK CORPORATION

CA 80-496                                             614 S.W. 2d 516

Court of Appeals of Arkansas
Opinion delivered April 15, 1981
[Rehearing denied May 20, 1981.]

*Meadows & Elcan*, by: *Frank C. Elcan, II*, for appellant.

*David L. Osmon* and *H. David Blair*, for appellee.

TOM GLAZE, Judge. This appeal involves a law suit filed by Pigeon Creek Corporation (Pigeon Creek) for a loss to a houseboat it owned. Pigeon Creek alleged that it was entitled to damages for the loss pursuant to the terms of a policy issued by Employers Mutual Casualty Company (Employers). Pigeon Creek was awarded judgment for $10,750.50 and Employers brings this appeal from that adverse ruling.

The relevant facts are not in dispute. The policy in question was first issued by Employers to George and Mary Goetz on their 1969 Stardust Cruiser houseboat. Munsey Insurance Agency (Munsey) was the agent which handled the policy issuance and the term of the policy was December 23, 1975, to December 23, 1976.

On April 20, 1976, Pigeon Creek, through its president

and principal shareholder, Kenneth Fagan, purchased the houseboat from the Goetzes. On the same date, Fagan requested Munsey to transfer the existing insurance policy into the name of Pigeon Creek. At this same time, Fagan discussed the possibility of renting the houseboat to others in the course of his business; however, Munsey advised Fagan that there was a private pleasure warranty contained in the policy, and the policy would be null and void if the boat was used commercially. There were no further discussions between Munsey and Fagan until January 12, 1977.

On November 30, 1976, and prior to the policy expiration date of December 23, 1976, Munsey billed Pigeon Creek for the policy period of December 23, 1976, to December 23, 1977. Another request for payment was mailed at the end of December, 1976.

When payment was not received by January 12, 1977, Munsey telephoned Fagan to find out why. Munsey testified that Fagan stated that the boat had been used commercially and the policy was no good. Upon hearing of the commercial use of the boat, Munsey agreed that the policy was no good and requested the return of the renewal certificate so that Employers could give Munsey credit on the charges. Fagan agreed to return the certificate. Also on January 12, 1977, Munsey called Employers and informed it of his conversation with Fagan.

On January 14, 1977, the houseboat sank in the cove where it was moored. The sinking was due to a heavy accumulation of snow on the boat, causing the boat to sink lower in the water than normal and allowing water to flood the hull through a drive transom at the rear of the boat. Fagan testified that sixteen inches of ice surrounded the boat from the date of loss until the ice broke around March 10, 1977. Fagan further testified that extremes of temperature were responsible for the ice on the lake and that he had not attempted to remove the boat for some fifty days because of the ice in the cove where the boat was moored. On the night of January 14, Fagan discovered that the boat had sunk, and the next day he called Munsey, who informed him that he had no coverage. On this same day, January 15, 1977, Fagan

mailed the renewal premium in the amount of $230 to Munsey, who promptly rejected and returned the payment to Fagan. After attempts to resolve the controversy between Employers, Munsey and Pigeon Creek failed, Pigeon Creek filed suit against Employers which led to this appeal.

Appellant raises six points on appeal. Our decision, however, turns on one issue, *viz*., whether or not the insurance policy was in effect at the time of appellee's loss in view of the fact that the policy term had expired, and appellee had failed to pay the premium for its renewal. Although this issue was mentioned by the trial judge, it was not decided below. Evidence was introduced and fully developed without objection on the issue at trial and is also argued here. Therefore, this point for reversal is before us and is binding on the parties on the merits of this controversy. *Moorehead* v. *Universal C.I.T. Credit Corporation*, 230 Ark. 896, 327 S.W. 2d 385 (1959). The controlling law on this issue is found in the case of *Preferred Risk Insurance Company* v. *Central Surety & Insurance Corporation*, 191 F. Supp. 797 (W.D. Ark. 1961). See also, *Roberts* v. *Buske*, 12 Ill. App. 3d 630, 298 N.E. 2d 795 (1973) and *St. Paul Fire & Marine Insurance Company* v. *Bierwerth*, 285 Minn. 310, 175 N.W. 2d 136 (1969). In *Preferred*, the insured owned an automobile which was first insured on May 20, 1958, until November 20, 1958, by Central Surety & Insurance Corporation through its agent, Greening Insurance Agency. Prior to the expiration of the automobile policy on November 20, 1958, the Greening Agency had prepared and forwarded to the insured a new six month policy which would expire on May 20, 1959. The insured paid the premiums timely and the new policy was in effect for the full six month period. However, on May 8, 1959, and prior to the expiration of the second six month policy, the Greening Agency forwarded to the insured a third policy to cover her automobile from May 20, 1959, to November 20, 1959. A bill for the due premium payment was mailed to the insured on two occasions, May 18 and June 1, 1959. The insured never paid the premium and no cancellation notice and agreement were performed between the parties. On June 7, 1959, the insured was killed in an accident which involved her automobile. A law suit was filed against Central Surety & Insurance Corporation

wherein it was contended the renewal policy for the May 20, 1959, to November 20, 1959, term was in force and effect.

The court found that the insured had received the renewal policy; she did not pay the premium; she had purchased a new policy with the same coverage through another insurance company and its agent on May 20, 1959. The court held that the policy issued by Central was not in effect at the time of the accident and stated the rule of law that we believe is also controlling of the facts and issues at bar. The court said:

> Normally, in insurance cases the offer is made by application on the insured and acceptance is manifested by delivery of the policy by the insurer. *The unsolicited delivery of a renewal policy prior to the expiration of the original policy, as in this case, is not an acceptance, but an offer, and no contract of renewal is created unless acceptance by the insured is expressly made or necessarily inferred.* [Emphasis supplied.]

In the instant case, Pigeon Creek did not request Employers or Munsey to renew the yacht insurance policy. Munsey sent Pigeon Creek unsolicited both the renewal certificate and the statement for premiums. In fact, since the premiums had not been paid by Pigeon Creek by January 12, 1977, or about three weeks after the policy date had expired, Munsey called Pigeon Creek's president, Fagan, and asked why the premiums had not been paid. Fagan admitted this conversation with Munsey regarding the overdue premium payment, and also said that Munsey wanted to know when he was going to send in the payment. However, there is no evidence in the record that reflects that Fagan expressly accepted the renewal certificate when he discussed the matter with Munsey, nor is there evidence from which it can be inferred. Fagan did not mail the overdue payment on January 12, 13 or 14. He mailed the payment on January 15, the day after Fagan discovered the loss of the boat, and twenty-three days after the policy had expired. Considering the rule enunciated in *Preferred* as applied to the facts before us, we are of the clear opinion that Pigeon Creek did not accept the renewal certificate offered by Employers, and

therefore, there was no insurance policy in effect between Pigeon Creek and Employers on January 14, 1977.

Pigeon Creek relies on the case of *American Employers' Liability Insurance Company* v. *Fordyce*, 62 Ark. 562, 36 S.W. 1051 (1896) and contends that we should find the policy in effect because there was a legal presumption that a short credit had been extended to Pigeon Creek for the premium payment. The *Fordyce* case did not involve a policy renewal but rather a new policy and the initial premium, two legally different and distinguishable factual situations as was noted in *Preferred*. Even if initial and renewal policy issuances evoked the same legal principle, the presumption of short credit found by the court in *Fordyce* involved a new liability policy issuance and the liability which accrued under the policy was before the insurer demanded payment of the premium from the insured. As we have already discussed above, Munsey had made demand for payment in this cause in advance of the loss.

In accordance with the above, we reverse the judgment of the trial court with directions to enter judgment in favor of Employers.

Reversed and remanded.

MAYFIELD, C.J., and COOPER, J., dissent.

MELVIN MAYFIELD, Chief Judge, dissenting. The majority opinion has decided this case for itself, overlooking the fact that this is an appeal from a circuit court. On appeal, chancery cases are tried de novo and the appellate court may enter the decree which it finds should have been rendered by the chancellor. *Ferguson* v. *Green*, 266 Ark. 556, 587 S.W. 2d 18 (1979). On appeal, circuit cases are not tried de novo and we review only the errors assigned and do not decide issues of fact. *Fidelity & Deposit Co.* v. *Fairfield*, 169 Ark. 997, 278 S.W. 658 (1925). *Houston* v. *Adams*, 239 Ark. 346, 389 S.W. 2d 872 (1965).

Contrary to the above rule, the majority opinion has

decided that no contract of insurance was entered into between the parties because it finds that delivery of the renewal policy was an offer which was not accepted. This factual finding is made despite the fact that the trial court specifically stated that this issue had not been raised by the attorneys and that no offer and acceptance questions would be addressed by the court.

After holding that a case appealed from circuit court should be reversed, the court in *St. Louis Southwestern Railway Co.* v. *Clemons*, 242 Ark. 707, 415 S.W. 2d 332 (1967), said:

> We come now to the question of whether this case should be dismissed or remanded. This court has long adhered to the rule so well reiterated in *Fidelity Mutual Life Insurance Co.* v. *Beck*, 84 Ark. 57, 104 S.W. 533 and 1102 (1907). The general rule is to remand common law cases for new trial. Only exceptional reasons justify a dismissal. One of the exceptions is an affirmative showing that there can be no recovery. *Pennington* v. *Underwood*, 56 Ark. 53, 19 S.W. 108 (1892). There it was said that when a trial record discloses "a simple failure of proof, justice would demand that we remand the cause and allow plaintiff an opportunity to supply the defect." To the same effect, see *Hinton* v. *Bryant*, 232 Ark. 688, 339 S.W. 2d 621 (1960).

This procedure should have been followed in this case. The result of what the majority has done is to take a circuit court case and decide for itself a fact which was not even presented to or decided by the circuit court. If this were an appeal from chancery court, this would be proper. It is not proper to do this in an appeal from a law court.

I believe the decision of the circuit court should have been affirmed but if the case is to be reversed for the reason stated in the majority opinion, it certainly should be remanded for a new trial.

JAMES R. COOPER, Judge, dissenting. The majority in this case has found that the insurance policy on the boat

owned by Pigeon Creek Corporation had expired December 23, 1976, and that there was no coverage by reason of the expiration as of the date of the loss on January 14, 1977. I cannot agree.

The facts are correctly stated in the majority opinion, and it is unquestioned that Mr. Fagan, President of Pigeon Creek Corporation, had not paid the premium for the renewal certificate prior to the date of the loss. The majority bases its holding on *Preferred Risk Insurance Company* v. *Central Surety & Insurance Corporation*, 191 F. Supp. 797 (W.D. Ark. 1961). The majority opinion quotes from that case and adopts as the law of this case that:

> ... The unsolicited delivery of a renewal policy prior to the expiration of the original policy, as in this case, is not an acceptance, but an offer, and no contract of renewal is created unless acceptance by the insured is expressly made or necessarily inferred. ...

In its opinion, the trial court specifically found as follows:

> *Expiration of policy — non-payment of premium:* A previous policy was in force covering the boat in question. Around the first of December a renewal certificate was issued by the defendant renewing the policy for one year. The premium was charged to the agent's account and the agent billed the plaintiff. It appears well settled law that it is not necessary that the premium be paid for coverage to take effect, unless prepayment of premium was expressly provided as a condition precedent before coverage took effect. Such was not the circumstance in the case at bar.

> It occurs to the Court that a renewal agreement is in one sense an entirely new contract. If this were the case, a proposition could be posed that, under these circumstances, there was merely an offer extended requiring an acceptance and that the offer was withdrawn. *Since this issue has not been raised by the attorneys and since the renewal has been viewed as one continuous con-*

*tract,. the Court will not address any offer and accept-
ance questions.* [Emphasis supplied]

As is shown by this quotation, the Court found that the
issue on which the majority bases its opinion was not raised
at trial, nor was it considered by the trial court in reaching its
decision. The Court specifically found that the parties
viewed the "renewal as one continuous contract," and I am
unable to see how we can do otherwise.

In any event, the *Preferred* case can be distinguished,
since, in that case, the insured had purchased another policy
on the same property with the same coverage, and in that
case the premium had not been paid by the insurance agent.
In this case, the trial court, sitting without a jury, was
required to rule as to whether the credit had been extended to
Pigeon Creek Corporation. The Court did rule that the
premium for the renewal was charged to the account of the
insurance agent, who then billed Pigeon Creek Corpora-
tion. This could be nothing other than a finding of short
credit extended to the Corporation by the agent. I believe
that the case of *American Employers' Liability Insurance
Company* v. *Fordyce*, 62 Ark. 562, 36 S.W. 1051 (1896)
correctly states the law in this case as follows:

> ... While the insurance company had the right to
> cancel the policy for the nonpayment of the premium,
> as per the contract between the parties, it had no power
> to make this cancellation relate back, and avoid the
> policy ab initio. ...

> ... Now, in the present case, while the premium had
> not in fact been paid, credit had been extended, and
> before any demand had been made for the payment of
> the premium, the liability accrued. The insurer also a
> short time thereafter cancelled the policy, thus electing
> not to insist upon the payment of the premium. ...

The only factual distinction here is that demand was
made for the premium prior to the loss. The demand was
made on January 12, 1977, and the loss occurred on January
14, 1977. No notice of cancellation was sent to the insured

prior to the loss, and was only sent some 7 days following the loss.

The majority seeks to distinguish *Fordyce* on the ground that it involved a new policy and an initial premium. If the law is that in a case of a new policy and an initial premium, a short credit would allow the policy to be in force, how can it make any sense not to allow a short credit on a continuing contract, a renewal annually of an insurance contract, to cause the policy to remain in force?

The agent for Employers, Mr. Munsey, obviously believed that the policy was in full force and effect when he telephoned Mr. Fagan to request payment of the premium. He testified as follows:

> Q. Would you relate for the Court what occurred in your conversation of January 12, 1977, with Mr. Fagan, please?
>
> A. We had sent him this statement for renewal of premium and we had not received our money. So, I called Mr. Fagan on January 12, and asked him why he hadn't paid his premium. He said, well, it's no good because I have been using the boat commercially. I said, that's absolutely correct, if you will return your certificate, *I want to get it cancelled*, so that it won't be charged against me, and he says, I will send it to you. That's the last I heard. I told him he didn't have any coverage. [Emphasis supplied] T. 183.

Plaintiff's exhibit number 5 is a letter from Mr. Munsey to Mr. Fagan dated January 17, 1977, stating that he (Munsey) was returning the check Fagan had sent for the premium. In that letter, Mr. Munsey indicated that following the conversation with Fagan on January 15, 1977 (in which Fagan notified him that the boat had sunk), he called the home office of Employers and they cancelled the policy as of the renewal date of December 23, 1977.

Defendant's exhibit number 7 is a cancellation certificate from Mutual Marine in New York, dated January 21,

1977, seven days following the loss. No notice was given prior to either notice of cancellation. Ten days notice prior to cancellation was required by the policy terms.

Mr. Fagan directly contradicted the testimony of Mr. Munsey as to the substance of the January 12, 1977 conversation. Fagan denied that he had told Munsey that the policy was no good. Fagan testified that he believed that he had coverage, except during the times the boat was being used commercially. He testified that this belief was founded on conversations he had with Munsey in April of 1976 when the policy was transferred to him. Munsey denied telling Fagan that the boat would be covered, even if used commercially, as long as the loss did not occur while it was being used commercially.

This case clearly involves the credibility of witnesses, and the question of whether there was substantial evidence to support the findings of the trial court. The majority has based its ruling on an issue which was not argued by the parties at trial, and which the trial court did not address. The Court, as previously noted, specifically found that the policy was renewed for one year, that the premium was charged to the agent's account, that prepayment of premium was not a condition precedent to coverage, and that the renewal was viewed as one continuous contract. I believe that there is substantial evidence to support these findings of the trial court, and, since there is substantial evidence, we should affirm. *Shuffield* v. *Hunter*, 268 Ark. 1083, 597 S.W. 2d 852 (Ark. App. 1980).

The majority has not reached any of the other points raised by appellant and I will not do so here. However, after reviewing the other arguments, the briefs, and the record, I can find no basis for reversal and I would affirm the trial court in all respects.