## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

# THE AETNA CASUALTY AND SURETY COMPANY V. FRANCES HARRIS

November 23, 1977.

Record No. 761158.

Present: Carrico, Harrison, Cochran, Harman, Poff and Compton, JJ.

*Lawrence H. Framme, III (Henry ·H. McVey, III; McGuire, Woods & Battle*, on brief), for plaintiff in error.

*David R. Johnson (Samuel W. Hixon, III; Williams, Mullen & Christian*, on brief, for defendant in error.

HARRISON, J., delivered the opinion of the Court.

The Aetna Casualty and Surety Company appeals a judgment entered against it by the lower court following a jury trial in which Frances Harris recovered a verdict for $33,289.13. The verdict represents the portion of a fire loss suffered by Harris equal to the ratio which the liability limit of an Aetna fire insurance policy bears to the total amount of fire insurance that Harris claims was in effect at the time of the fire.

Frances Harris owned and operated a restaurant near Farmville, Virginia, known as "Frankie's Alpine Restaurant". The building was of cinder block construction, 64 feet long and 24 feet wide, with a basement area, 40 feet by 24 feet. Harris obtained insurance coverage on the building and contents from Aetna through its local agent, the F.B. Hubbard Insurance Agency. Her policy was described as a standard fire policy and was originally effective for one year from July 20, 1972. It insured the building for $30,000, the contents for $18,000 and provided general liability coverage. At the same time the company wrote a policy of workmen's compensation insurance covering the employees of the restaurant.

In July, 1973, both policies were renewed for another one-year period, July 20, 1973, through July 20, 1974. The premium thereon was paid by Harris "some two or three months" after the policies were issued. On July 15, 1974, five days prior to their expiration date, Richard P. Lash, president of the Hubbard Agency, again sent renewal policies to Harris and wrote her the following letter:

"Frances:

"The enclosed are your renewal policies covering the period July 20, 1974 to July 20, 1975. Your premium is the same as it was last year. Please look over these and if we need to make any changes please do not hesitate to give me a call. We look forward to serving your needs for the coming year.

"s/s Dick Lash

"Richard P. Lash"

Lash received no response to this letter. During the night of August 1, 1974, the restaurant building and contents were destroyed by fire. On August 10, 1974, the Hubbard Agency received a letter from Harris dated August 9, 1974, addressed to Aetna, which read:

"As per instructions in my policy #58 FP 800853 FCA dated July 20, 1974, I hereby inform you of loss by fire to the building and contents insured by this policy. The date of the loss was August 1, 1974, at approximately 4:45 A. M.

"Within sixty days of the loss, I will be forwarding a complete inventory itemizing the loss.

"Please inform me of any additional requirements you may need.

"Sincerely,

"s/s Frances Harris"

Some time between the date the fire occurred and his receipt of Harris' letter, Lash learned that she had procured fire and workmen's compensation insurance policies from the Travelers Insurance Company. The Travelers policies covered the identical restaurant building and contents insured by Aetna and also provided Harris with duplicate liability and workmen's compensation coverage.

Responding to Harris' letter of August 9, 1974, the Hubbard Agency wrote her as follows:

"We are in receipt of your letter in regard to your recent fire loss. We are very sorry that this loss to you has occurred. It is most important that you contact us by telephone or in person as soon as possible so that we may talk with you in regard to this matter."

After writing this letter, Lash and Hunter R. Watson, co-owner of the Hubbard Agency, went to see Harris about the loss. Lash testified that "I asked her if she did not intend to replace all of our package because I had since learned about Travelers replacing our coverage with their own package". He stated that Harris responded that "she really was not positive . . . that she had coverage, you know, just exactly what she did have". Lash said he asked to see the Travelers policies so that he could tell her what her coverage was, but that Harris told him that she could not find them. Lash said that he inquired why, if Harris felt she still had coverage with Aetna, she had not paid the premium on the policy, and her answer was that she intended to, and would bring him a check that afternoon. Lash stated that she never came to his office or paid the premium on the policy; and that "the next time I saw her was a year or so later", after Harris had sued Aetna.

Watson testified that they told Harris that "it seemed to be an irregular situation", and there was a question whether she had any insurance with Aetna because apparently she had bought complete insurance from another agency.

Harris testified that she never paid the premium because she "did not know how much to pay", and that Lash told her that she did not have to pay the entire premium. She admitted that she never submitted the inventory mentioned in her letter of August 9th. She said that she was not aware that she had to submit the inventory within 60 days; that she thought that the Hubbard Agency would get it from Travelers; and that she thought Aetna would use the same procedure as Travelers, but "they never brought nothing for me to fill out, no blanks or nothing". She also admitted that she never requested any proof of loss forms from Lash or Watson like the ones she signed for Travelers, her explanation being that "Travelers brought it to me, they came out to the house and brought it".

Scott M. Harwood, a partner in the Harwood and Son Agency in Farmville, local agent for Travelers Insurance Company, testified that his first involvement with Harris was when one of his licensed solicitors advised him that he had contacted Harris and that "she wanted us to write some insurance on her restaurant". After he inspected the property and made investigation as to its value, his company issued two policies, both effective April 1, 1974. One was a comprehensive fire

insurance policy, and the other was a workmen's compensation policy. The fire policy provided $40,000 coverage on the building, $35,000 on its contents, $100,000 general liability and property damage and $5,000 medical payments. The workmen's compensation policy was the usual policy of this type.

Harris filed a proof of loss with the Travelers Insurance Company in which she represented that the total amount of insurance upon the property described in the policy was $75,000. She estimated the actual cash value of the building to be $44,957.72, and the actual cash value of the contents of the building to be $40,361.34. Travelers effected settlement with Harris by paying her $75,000, the full amount of its coverage.

The dispositive issues in the case are whether Harris accepted the renewal policy dated July 20, 1974, which Aetna, through its agent, offered to her; and if accepted, whether Harris failed to comply with the terms of the policy following the August 1, 1974 fire. If Harris purchased insurance from Travelers *to replace* her coverage with Aetna, which would expire on July 20, 1974, then Aetna is relieved from any obligation or liability to the appellee arising out of the August 1, 1974 fire.[1] And this is true notwithstanding that she may never have notified Aetna of her intention to make the substitution, and although she did not return the Aetna policy. It is essential to the creation of a contract of insurance that there be an offer or proposal by one party and an acceptance, express or implied, by the other. A renewal contract of insurance must also have these essentials, such as mutual assent and a new consideration.[2]

Aside from the statement by Harris that she desired the additional insurance represented by the Travelers policy, we have no explanation of the unusual circumstances surrounding the purchase of duplicate coverage from Travelers[3], or any explanation of her conduct subsequent to the fire.

---

[1] *See Kudrna v. Great Northern Ins. Co.*, 175 F. Supp. 783 (Mont. 1959).

[2] *See Boone v. Standard Acci. Ins. Co.*, 192 Va. 672, 66 S.E.2d 530 (1951); *Swentusky v. Prudential Ins. Co.*, 116 Conn. 526, 165 A. 686 (1933); *St. Paul Fire & Marine Ins. Co. v. Bierwerth*, 285 Minn. 310, 175 N.W.2d 136 (1969); *Hodge v. National Fidelity Ins. Co.*, 221 S.C. 33, 68 S.E.2d 636 (1952); 43 Am. Jur. 2d *Insurance* § 380 (1969).

[3] The annual premium on the Travelers policy was $1,616. The premium on Aetna's renewal policy would have been $1,079. A substantial portion of the coverage afforded by Travelers duplicated coverage afforded by Aetna.

Aetna argues that Harris' conduct is wholly inconsistent with a finding that she accepted the renewal policy offered her by Aetna. It deems significant the fact that, with the exception of the exchange of letters in August, 1974, and the visit thereafter paid Harris by Lash and Watson, the record is devoid of any contact between Harris and the company's agent for a period beginning in July, 1973, and extending until July 25, 1975, when this action was instituted. There had been only one renewal of the policies by Aetna, and it says that neither this nor other evidence by Harris established a course of dealings between her and Aetna.[4]

Harris did not request the renewal policy from Aetna. She did not acknowledge receipt thereof. She has never paid the premium thereon or any part thereof, or given a satisfactory explanation for her failure to pay.

The formal notification given Aetna by Harris that the fire had occurred, established that she had read the policy, understood her obligations thereunder and her duty to inform the company of the loss by fire of the building and contents. More importantly, the letter demonstrated that Harris understood that "within 60 days of the loss" she was obligated to file a proof of loss and an itemized inventory of the property destroyed. At that time Harris was negotiating with the Travelers Insurance Company and filed with that company a complete, itemized and comprehensive list of the contents of the building, and estimates as to the actual value and cost of replacing the building and contents. No proof of loss and itemized list were ever filed with Aetna, and no request for any forms was ever made of it by Harris.

In the proof of loss filed with Travelers, Harris represented in writing that the *total amount of insurance* upon the building described in the Travelers policy was $40,000, and that the total amount of insurance upon the contents of the building described in the policy was $35,000, *and that there was "no policy or other contract of insurance, written or oral, valid or invalid".* Travelers settled with Harris upon her representation, and, admittedly, on the assumption that she had no other insurance.

---

[4] *See Boone* v. *Standard Acci. Ins. Co.*, 192 Va. 672, 66 S.E.2d 530 (1951); *Plelan* v. *Everlith*, 22 Conn. Supp. 377, 173 A.2d 601 (1961); *Roberts* v. *Buske*, 12 Ill. App. 3d 630, 298 N.E.2d 795 (1973); Standard Casualty Co. v. Boyd, 75 S.D. 617, 71 N.W.2d 450 (1955).

From the date of the fire, Harris pursued her claim under the Travelers contract until that company effected settlement with her. No suit was filed against Aetna, no claim was made against Aetna, and no correspondence was exchanged other than her letter of August 9, 1974 and Lash's response, until this action was filed on July 25, 1975.

Harwood testified that at the time Travelers wrote its policy covering the Harris building and contents, appellee did not disclose that she had other insurance or that the property was covered by a policy with Aetna. Neither did she advise Aetna that she had taken out an insurance policy with Travelers on the identical property insured by Aetna. Lash testified that he would not have issued the renewal had he known of the Travelers policy. Harris testified that when she renewed her policy with Aetna in July, 1973, she felt that $48,000 was adequate coverage on the building and contents. It was only eight months later that she purchased the $75,000 policy from Travelers, thereby increasing her coverage on the building to $40,000 (a $10,000 increase over the Aetna policy) and on the contents to $35,000 (a $17,000 increase over the Aetna policy). The effect of the increases was that between April 1 and July 20, 1974, Harris had fire coverage totaling $123,000 on property which, accepting her estimates, had a value of only $85,319.06.

We are not dealing here with an illiterate policyholder. Harris is a registered nurse who worked in Washington and spent her weekends conducting a restaurant operation in which she employed some nine persons. There is no intimation of over-insurance for improper reasons, and no suspicion attaches to the origin of the fire. There is little to indicate that Harris intended to continue in force the duplicate, expensive and unnecessary insurance coverage which would have occurred had she accepted the Aetna policy.

It is appellant's position that Harris manifested no intent to accept the renewal policy tendered by Aetna, and that it was not accepted. It says that the policy issued by Travelers was designed to replace Aetna's policy and to increase from $48,000 to $75,000 the fire coverage on the restaurant and contents. While there is evidence to support this argument, it is unnecessary for us to so conclude.

■ Assuming, but not deciding, that Aetna's renewal policy

was in effect on August 1, 1974, it is clear that Harris failed to comply with the terms thereof after the loss occurred, and that there has been no waiver of compliance by appellant.

The Aetna policy specifically provides that "no suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with. . . ." Among its requirements the policy provides that the insured shall give immediate written notice to the company of any loss, furnish a complete inventory of the destroyed, damaged and undamaged property, and show in detail quantities, cost, actual cash value and the amount of loss claimed. Within 60 days after the loss, unless such time is extended in writing by the company, the insured is required to render to the company a proof of loss signed and sworn to, stating to his or her knowledge and belief the time and origin of the loss, the interest of the insured and others in the property, the actual cash value of each item thereof, and the amount of the loss. The insured must also state "all other contracts of insurance, whether valid or not", covering any of the property destroyed.

It has long been settled in this state that if an insurance policy makes the furnishing of a proof of loss a condition precedent to an action upon it, performance or waiver of it must be shown before a recovery can be had. *See Home Ins. Co.* v. *Cohen,* 61 Va. (20 Gratt.) 312, 316-17 (1871). The burden of proving compliance with the necessary requirements of an insurance policy as to proof of loss, or the waiver of such compliance on the part of the company, is on the insured; and, if he fails to establish the same by a preponderance of the evidence his action must fail. *See Eden Corp.* v. *Utica Mut. Ins. Co.,* 350 F.Supp. 637 (W.D. Va. 1972). However, in respect to fire policies, and in the absence of bad faith, the law requires of an insured only a reasonable and substantial compliance with the clauses, conditions and warranties of the policy. *See Maynard* v. *National Fire Insurance Co. of Hartford,* 147 W.Va. 539, 129 S.E.2d 443 (1963).

We have heretofore quoted the letter written by Harris on August 9th, informing Aetna of the loss of her property by fire. It is obvious that Harris then had before her the Aetna renewal policy and understood its requirements. She never supplied the inventory, a proof of loss or any of the information required by the policy other than the fact that a loss had occurred. Therefore

the only question which remains is whether her noncompliance was waived or excused.

■ The trial court granted appellee two instructions. One told the jury that if it believed that Harris' letter of August 9, 1974 constituted a request that Aetna furnish her proof of loss forms, and that the company failed to provide the forms, then her failure to file such proof of loss did not bar her recovery under the policy. This instruction was predicated upon Code § 38.1-345, which provides that if an insured makes a written application to an insurance company, or any agent of such company, the company must within fifteen days of such request deliver to the insured forms for proof of loss or damage as may be required under the policy of insurance. Failure to deliver the required forms is deemed a waiver of any condition, stipulation or provision in the policy requiring such preliminary proof of loss.

The other instruction told the jury that if it found the statements and conduct of Aetna and its agents after the fire amounted to a denial of liability or a refusal to process the plaintiff's claim, it could find that Aetna had waived the condition of furnishing proof of loss and therefore it could not rely upon a failure of Harris to furnish such proofs to bar her recovery.

We find no evidence to support the granting of these instructions, or evidence from which the jury could have found that the company waived any requirements under its policy, or refused to accept and process appellee's claim. Harris' letter made no request for forms. On the contrary, it affirmatively advised the company that she would comply with the provisions of the policy by forwarding "a complete inventory itemizing the loss", and that this would be done "within 60 days of the loss", as the policy required.

Little significance can be attached to the meeting between Harris, Lash and Watson. At this meeting there was a degree of understandable "sparring" by the parties. The fire had occurred, the existence of the Travelers policy had surfaced, and neither Harris nor those connected with the Hubbard Agency were certain of their respective rights and liabilities. Lash and Watson did not know whether, under the circumstances, Aetna was liable, and obviously Harris was equally as uncertain whether she could recover from both Travelers and Aetna. The

parties discussed whether Harris had replaced the Aetna policy, and the payment of the premium on the Aetna policy. No request was then made by Harris for proof of loss forms or for a form on which to submit an inventory of the property destroyed by the fire. And Lash and Watson made no commitments as the liability or nonliability of Aetna.

Other than her letter Harris made no effort to comply with the terms of her policy, or to collect thereunder, until she instituted the case under review. For nearly twelve months her efforts were apparently concentrated on collecting from Travelers the full coverage its policy afforded. During that same period Aetna was without the information from Harris which the policy required be submitted by her. This information was necessary for appellant to investigate and to determine its liability, if any; the amount of the loss; the amount claimed by the insured; and whether the property that was burned was insured by another company to which Aetna could look for contribution.

Accordingly, for the reasons assigned, the judgment of the lower court is reversed and final judgment will be entered here for appellant.

*Reversed and final judgment.*