Present:  All the Justices

ALLSTATE INSURANCE COMPANY

v.    Record No. 970671        OPINION BY JUSTICE ELIZABETH B. LACY
                                        January 9, 1998
PATRICIA A. CHARITY, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Alfred D. Swersky, Judge

In this appeal, we consider whether a proof of loss submitted by an insured substantially complied with the terms and conditions of a fire insurance policy.

Allstate Insurance Company (Allstate) issued a fire insurance policy covering property owned by Patricia A. Charity. The property was totally destroyed by a fire. The policy required Charity to submit a proof of loss and required that, if Allstate chose to rebuild the property, it had to inform Charity of such decision within 30 days of receiving the proof of loss.

Charity notified Allstate of the loss and submitted a proof of loss on June 23, 1995.[1] In completing the form, Charity wrote "To be determined" in the blanks designated as "Actual Cash Value of said property" and "The Amount Claimed under the . . . policy." On November 22, 1995, Charity submitted a second proof of loss containing a dollar amount for the cash value of the dwelling. On December 6, 1995, Allstate notified Charity that it intended to rebuild the property. When Charity refused to allow Allstate to rebuild the premises, Allstate filed a motion for declaratory judgment seeking a determination that it was entitled

_____
[1] Charity hired The Goodman-Gable-Gould Company, a public adjustment company, to assist her in the settlement of her claim.

to rebuild the premises pursuant to the terms of the policy.

The parties stipulated the evidence and exhibits and submitted the case to the trial court on cross-motions for summary judgment. The trial court held that the June 23 proof of loss substantially complied with the policy conditions, and, therefore, under the policy, Allstate was required to notify Charity that it intended to exercise its option to rebuild within 30 days of June 23. The trial court entered judgment in favor of Charity.

Allstate appeals the judgment of the trial court, asserting that substantial compliance requires that the proof of loss submitted by an insured contain the dollar amount of the loss and, therefore, Allstate's December 6, 1995 notification to Charity of its intent to rebuild was timely. Because we conclude that neither the conditions of the policy nor the purpose of a proof of loss require that the form contain the actual dollar amount of the loss, we will affirm the judgment of the trial court.

We have held that the terms and conditions of a fire insurance policy are satisfied by a showing of reasonable and substantial compliance, in the absence of bad faith. Aetna Cas. Co. v. Harris, 218 Va. 571, 578, 239 S.E.2d 84, 88 (1977). In addition, we have determined that providing the insurer with only the fact of loss does not constitute substantial or reasonable compliance. Id. at 578-80, 239 S.E.2d at 88-89. Whether

2

substantial and reasonable compliance requires the insured to furnish the dollar amount of the actual cash value of the loss in this case depends on the requirements of the policy and the purpose of the proof of loss.

The policy conditions relevant to the proof of loss are found in Part 4, Section 1, Paragraph 3 of the policy.  That paragraph provides that, in the event of a loss, the insured "must" do a number of things, one of which is to provide the company with a sworn proof of loss.  The paragraph also lists a number of items that "should" be included in the proof of loss, including the actual cash value and the amount of the loss of the items damaged or destroyed.  Allstate's deliberate use of the words "must" and "should" in separate parts of the same paragraph compels the conclusion that the words have different connotations.  In this context, "should" is permissive, and therefore, the dollar amount of the loss is not a required part of the proof of loss.  Even if the insurer's choice of words created some doubt as to whether the listed items were required to be included in the proof of loss form, such doubt must be resolved against the party drafting the policy.  Fidelity & Cas. Co. of New York v. Fratarcangelo, 201 Va. 672, 677, 112 S.E.2d 892, 895 (1960).  Based on the language used, we conclude that the policy conditions do not require that the actual dollar amount of the loss be stated on the proof of loss form.[2]

2 Code § 38.2-2105's requirement that a fire insurance policy "shall" contain certain provisions, including one

3

Even though the policy does not require the actual dollar amount in the proof of loss, the insured retains the burden to show that the information actually provided constitutes reasonable and substantial compliance with the requirement that a proof of loss be submitted to the insurer. Harris, 218 Va. at 578, 239 S.E.2d at 88. The parties do not dispute that the purpose of a proof of loss is to enable the insurer to investigate the insured's losses, to estimate its rights and liabilities, and to prevent assertion of fraudulent or unjust claims. Walker v. American Bankers Ins. Group, 836 P.2d 59, 62 (Nev. 1992); Sutton v. Fire Ins. Exch., 509 P.2d 418, 419 (Or. 1973). If the information Charity provided was sufficient to allow the proof of loss to be used for these purposes, Charity has met her burden of substantial compliance.

Allstate admits that the proof of loss submitted by Charity in June was sufficient to allow it to investigate the claim. Allstate asserts, however, that because the dollar amount of the loss was not on the form, it could not "determine the nature and extent of the loss or its liability." As explained in oral argument, what Allstate means is that without Charity's statement of the actual dollar value of the loss, Allstate could not determine whether it should exercise its option to rebuild. In

calling for notification to the insurer of the "amount of loss claimed," does not require a different result. Section 38.2-2107 provides that a company may use simplified alternative language which is no less favorable to the insured than that contained in § 38.2-2105.

4

essence, Allstate asserts that it needs to know the amount an insured is claiming so that it can compare that amount to what its investigation shows its liability may be.

Having an insured's estimate of its loss undoubtedly would assist the insurer in structuring its position in settlement of the claim.[3]  But the extent of Allstate's liability is determined by the loss itself, the policy's coverage restrictions, and the limits of the policy, not by the dollar amount the insured places on the proof of loss form.  Not knowing the dollar amount of the insured's claim does not affect the ability of the insurance company to determine the amount of its liability.  As stated by the trial court, "[t]here was nothing once [Allstate] got the proof of loss statement from Ms. Charity to prevent [it] from going out and conducting [its] own investigation . . . ."

The information provided on the June 23 proof of loss allowed Allstate to investigate the loss, to determine its liability, and to prevent a fraudulent claim.  Therefore, the June 23 proof of loss substantially and reasonably complied with the terms of the policy and the purposes of a proof of loss.

Part 4, Section 1, Paragraph 4 of the policy states that in order to exercise the option to rebuild the property, Allstate "must give **you** notice of **our** intention within 30 days after **we** receive **your** signed, sworn proof of loss."  When Allstate

_____

3 Other provisions of the policy specifically provide procedures for resolving disparities between the amount claimed by the insured and the amount offered by the insurer.

5

received a proof of loss which reasonably and substantially complied with the conditions of the policy, the thirty-day period began to run. In this case, the thirty-day period began to run with the submission of the June 23 proof of loss. Allstate did not notify Charity of its intention to rebuild the destroyed property within the time required by the policy conditions and, therefore, waived its option to rebuild.

For these reasons, we will affirm the judgment of the trial court.

Affirmed.

JUSTICE KOONTZ, with whom JUSTICE COMPTON and JUSTICE KEENAN join, dissenting.

I cannot join in the result reached by the majority and, accordingly, I respectfully dissent.

On brief, the insured stated that the "To be determined" answers she provided on June 23, 1995 in the blanks on the proof of loss form designated for the "Actual Cash Value" of the damaged property and the amount of her claim were "the equivalent of, 'I don't know now, but I'm working on it.'" Undoubtedly that is true, and it makes sense when considered in light of the provisions of the policy, noted by the majority, that specifically provide procedures for resolving disparities between the amount claimed by the insured and the amount offered by the insurer.

This is not a situation involving a denial of a claim by the insurer. The sole issue is when, under the express terms of the

6

insurance contract, the completion of the proof of loss form triggers the thirty-day option of the insurer to pay the claim or to rebuild the property.

In Aetna Cas. Co. v. Harris, 218 Va. 571, 578-80, 239 S.E.2d 84, 88-89 (1977), as noted by the majority, we have determined that providing the insurer with the mere fact of loss does not constitute substantial and reasonable compliance with the requirements of the insurance policy to provide a proof of loss. In my view, for purposes of determining whether sufficient information was provided to trigger the thirty-day option period, the proof of loss here which provided no more information to the insurer regarding the amount of the claim than "I don't know now, but I'm working on it," is really no more than a notice of loss. Clearly it falls short of a proof of loss that permits the insurer to determine intelligently how to exercise its contractual options in response.

For these reasons, I would hold that the thirty-day period within which the insurer had the right to exercise the option to rebuild or to pay the claim commenced on November 22, 1995, when the insured provided the second proof of loss statement containing the dollar amount for the value of the damaged dwelling, and I would reverse the judgment of the trial court.

7